Ross J. **LANINGHAM**, Appellant,

v.

**UNITED STATES NAVY.**

No. 85–5281.

United States Court of Appeals, District of Columbia Circuit.

Argued March 19, 1986.
Decided March 17, 1987.

Thomas B. Shull, with whom Stephen C. Glassman, Washington, D.C., was on the brief, for appellant.

Stuart H. Newberger, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Royce C. Lamberth and Michael J. Ryan, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before WALD, Chief Judge, and ROBINSON and BORK, Circuit Judges.

Opinion PER CURIAM.

PER CURIAM:

This appeal arises from a grant of summary judgment for the defendant, appellee here, the United States Navy. The plaintiff-appellant, Ross J. Laningham, sued *pro se*, alleging violations of his rights under the Privacy Act, 5 U.S.C. § 552a (1982) and seeking damages under 5 U.S.C. § 552a(g)(4) (1982). Laningham alleged that the Navy disclosed sensitive documents during a successful lawsuit by Laningham in the Claims Court, that those documents were irrelevant to the Claims Court action, that the Navy had willfully and intentionally disclosed the documents, and that the disclosure of the documents damaged the plaintiff. Because we find that appellant failed to present evidence sufficient to establish the existence of a genuine issue of material fact with respect to the Navy's intent in disclosing the documents, we affirm the decision of the district court.

### I.

In May of 1981, Laningham filed suit in the Claims Court to recover wrongfully terminated disability payments which he alleged were due to him as a result of an

automobile accident. *See Laningham v. United States,* 2 Cl.Ct. 535 (1983). On November 2, 1981, the Navy sought leave to file out of time its motion for summary judgment, motion for leave to waive reproduction of the administrative record, and the administrative record. Record ("R.") 5, Attachment 1. The Claims Court granted the unopposed motion on November 3, 1981. *Id.,* Attachment 3.

In responding to the Navy's motion for summary judgment in the Claims Court proceeding, Laningham submitted a letter from the Navy dated May 9, 1982, and a copy of an administrative decision issued by the Navy on April 21, 1982, both concerning the possibility of appellant's disability retirement. R. 19, Exhibits 1 & 2 to Exhibit C. Laningham argued in his reply that until the Navy had found him "unfit for duty" in those retirement disability proceedings, there could be no final administrative disposition of his disability claim in the Claims Court proceeding. *Id.,* Exhibit C at 6–8.

In response to Laningham's submission of the letter and the April 1982 administrative decision, the Navy, on April 20, 1983, moved to supplement the administrative record by filing as "Exhibit G" a sealed copy of Laningham's current "Disability Evaluation System Record of Proceeding," R. 19, Exhibit D, which is "a certified copy of the administrative record compiled in the course of [Laningham's] reevaluation for disability retirement purposes since May 27, 1982." *Laningham,* 2 Cl.Ct. at 543 n. 8. The Navy explained the purpose of the motion as follows:

> While it is defendant's position that the proceedings in plaintiff's case before the various boards of the Navy's Disability Evaluation System are irrelevant to determination of the issues in the present case, because the Court has been presented various documents from the record in connection with plaintiff's reply brief and other filings by the parties, it is felt that the Court should have the complete record.

R. 19, Exhibit D. Laningham opposed the Navy's motion to supplement the administrative record on the grounds that the records were irrelevant and that the "file is not in the public domain[,] contains personal information about the plaintiff [and] should only be released to the plaintiff himself pursuant to the provisions of the Freedom of Information Act." R. 5, Attachment 6. The Navy filed a reply in which it again stated that the records were being submitted "because plaintiff, in its reply brief, had referred to and included in his appendix, correspondence relating to his ongoing and collateral appeals concerning disability retirement." *Id.,* Attachment 7. In response to Laningham's claim that the file contained personal information, the Navy stated that it "knows of no rule which permits only those documents 'in the public domain' to be considered by the Court" and argued that the Freedom of Information Act was not relevant to its motion. *Id.*

At a subsequent hearing before the Claims Court on the parties' cross-motions for summary judgment, the Navy again stated that its purpose in supplementing the record was to resolve any confusion concerning the retirement disability proceedings. R. 21, Exhibit A at 53. On May 12, 1983, the Claims Court granted, without explanation, the Navy's motion to supplement the administrative record and "allowed" the records to be filed. R. 5, Attachment 8. In its final decision in these proceedings, the Claims Court noted that it had permitted the Navy to supplement the record over Laningham's objection and stated: "Plaintiff's petition does not raise any issues concerning the proceedings recorded in Exhibit G. The court, however, has reviewed the exhibit thoroughly to determine whether a 'final disposition' had been effected in plaintiff's case." 2 Cl.Ct. at 543 n. 8.

On October 31, 1983, Laningham filed an action in the district court alleging that the Navy's disclosure of his disability records in the Claims Court proceedings violated his rights under the Privacy Act, 5 U.S.C.

§ 552a (1982),[1] and seeking damages pursuant to 5 U.S.C. § 552a(g)(4) (1982).[2] On January 30, 1984, the Navy moved to dismiss, or in the alternative for summary judgment. The district court denied the motion for reasons not relevant here. *See Laningham v. United States Navy*, No. 83–3238 (D.D.C. Sept. 25, 1984). Laningham then moved for partial summary judgment on the issue of liability and the Navy cross-moved for summary judgment on the new ground that the Privacy Act did not create liability for emotional distress.

On December 26, 1984, the Navy filed a Supplemental Memorandum in Support of Defendant's Motion for Summary Judgment ("Supplemental Memorandum"), which in effect renewed its original summary judgment motion, on the ground that there had been no "willful" or "intentional" conduct by the Navy, and, therefore, no cause of action for damages accrued under 5 U.S.C. § 552a(g)(4) (1982). In support the Navy filed a sworn statement by Beacham O. Brooker, Jr., the attorney who handled the government's litigation before the Claims Court and who therefore had direct responsibility for the disclosure that became the subject of this action. *See* Joint Appendix ("J.A.") at 33–37. Brooker's declaration stated that he "did not intentionally or willfully seek to violate ... the Privacy Act [or] ... to embarrass or harm Mr. Laningham," J.A. at 36, and explained his reasons for filing the administrative record in the Claims Court. Brooker asserted that the documents were disclosed (1) as standard Justice Department practice, *id.* at 34, (2) to rebut any mistaken impression created by Laningham's partial submissions from the same set of documents, *id.* at 35–36, and (3) to dispel any notion of improper conduct of administrative proceedings *pendente lite*. *Id.* at 36.

On January 7, 1985, Laningham opposed the filing and substance of the defendant's Supplemental Memorandum. R. 20. He argued, among other things, that the Navy should not be permitted to file the supplemental opposition out of time and that the declaration of Brooker is not relevant because the Navy, and not the Department of Justice, is the appropriate defendant in this case. *Id.*, ¶¶ 1, 2. He also argued that it is not standard practice to disclose the complete administrative record in cases in the Claims Court because there is no written requirement that the record be filed. He added that it could not be a standard practice to file the administrative record in this case "because plaintiff's case was the first and only case of its type." *Id.*, ¶ 5.

Finally, Laningham argued that the Navy knew or should have known that disclosure would violate his Privacy Act rights because it was on notice of a possible violation. R. 20, ¶ 8. As support for this proposition, Laningham submitted a letter that he had written on April 25, 1983 (five days after the Navy moved to supplement the administrative record) to the Director of the Naval Council of Personnel Boards in which he stated that the Navy had violated the Privacy Act by mailing to his attorney the disability records which Laningham previously had requested pursuant to the Freedom of Information Act.[3]

---

1. 5 U.S.C. § 552a states that no agency

 shall disclose any record which is contained in a system of records by any means of communication to any person ... except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains.

2. 5 U.S.C. § 552a(g)(4) provides in relevant part:

 In any suit brought under the provisions of subsection (g)(1)(C) or (D) of this section in which the court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable to the individual.

3. The letter states in relevant part:

 My Disability Evaluation Record was erroneously delivered to an attorney, Mr. Robert C. Liotta, Esq., which was not requested, nor desired. [My letter of 31 March 1983 pursuant to the Freedom of Information Act] did not instruct you to permit a third party to gain access to my Disability Evaluation Record. On the contrary the current address was specifically provided for the purpose of mailing the requested document to me.

 The deliberate exposure of [the record] to a third party is a violation of the Privacy Act.... It is requested that a satisfactory, complete and appropriate explanation be provided to me as Mr. Liotta did not at that time represent me in my most recent disability proceedings as you must know having re-

Laningham also submitted a copy of the Navy's response in which it explained that it had sent the records to Laningham's attorney because it is required to send any documents filed by the United States in the Claims Court to opposing counsel.[4]

On the same date that Laningham submitted his opposition, the district court issued its decision granting the Navy's motion for summary judgment, *see Laningham v. U.S. Dep't of the Navy*, No. 83–3238 (D.D.C. Jan. 7, 1985), on the ground "that in circumstances such as [those evidenced by Brooker's declaration,] the actions of the government[ ] cannot be characterized as 'intentional and willful.'" Mem. op. at 3. Appellant moved for reconsideration of the district court's order, R. 21, and supplemented the motion for reconsideration, R. 23. The district court denied the motion for reconsideration and this appeal followed.

## II.

■ Laningham raises two procedural points that we address at the outset. First, he argues that the Navy did not properly raise the issue of intent and willfulness because it was "raised ... in a supplemental memorandum filed out of time." Brief for Appellant at 12–13. This argument lacks merit. Laningham does not cite any authority in Rule 56, Fed.R.Civ.P., or in the case law that prohibits the filing of a supplemental memorandum in support of a motion for summary judgment. The effect of the supplemental memorandum is to assert a further motion for summary judgment on the additional issue of the willfulness and intent of the government. Nothing in Rule 56 requires that all possible grounds for summary judgment be asserted simultaneously. Indeed, Rule 56(b) explicitly states that a defending party may move for summary judgment "at any time," and that such a motion may concern "all or any part" of the claim brought against that party. *See* Fed.R.Civ.P. 56(b). Thus, if the Navy could have "at any time" moved for summary judgment on the grounds asserted in its Supplemental Memorandum, we see nothing to preclude it from advancing this ground by way of a Supplemental Memorandum to its renewed motion for summary judgment.

■ Laningham's second point is that the timing of the district court's decision precluded him from controverting the issue of the Navy's intent "in any meaningful way." Brief for Appellant at 13. This argument also fails. Rule 56(c) gives a party resisting a motion for summary judgment ten days from the filing of that motion to "serve opposing affidavits." *See* Fed.R.Civ.P. 56(c). Thus, viewing the Navy's dispositive motion on the issue of intention and willfulness as having been filed on December 26, 1984, the district court could not have granted that motion before January 5, 1985, without violating that provision. The court filed its Memorandum Order on January 7, 1985—after the period in which Laningham was entitled to file an opposition. That the Memorandum Order was dated January 4, 1985, does not alter our conclusion. Had the plaintiff submitted evidence creating a material is-

---

viewed the file the previous day. Knowledge of that fact is imputed due to the fact that your Special Counsel reviewed the file.
 R. 20, Exhibit D(1).

**4.** The response provides in relevant part:
 Subj. Your allegations of Privacy Act violation Ref.
 (a) Yr ltr dtd 25 April 1983
 (b) *Laningham v. United States*, Ct.Cl. No. 109–81C
 (c) Yr ltr dtd 15 April 1983
 (d) My ltr NCPB:003:cah dtd 15 Apr 1983
 (e) Yr ltr dtd 24 April 1983
 1. By reference (a) you assert that the delivery to Mr. Robert C. Liotta, the attorney representing you in your Court of Claims action against the United States, reference (b), of a copy of the Disability Evaluation System Record of Proceedings in your case, pertinent to that action, constituted an erroneous delivery and a violation of the Privacy Act. You are advised that the Rules of Court require that a copy of all documents filed with the Clerk of the Court by the United States, in its defense of an action brought against it, be delivered to opposing counsel. You are reminded that, once so filed, the records become public records and are available for inspection by the general public. Your allegations of erroneous delivery and of a violation of the Privacy Act are not meritorious.
 *Id.,* Exhibit D(2).

sue of fact between that date and the date the order was filed, the district judge could simply have refused to issue the order. The trial judge, furthermore, could have vacated the order upon Laningham's subsequent motion for reconsideration if Laningham's January 7, 1985 opposition to the Supplemental Memorandum had presented any grounds requiring the court to refuse summary judgment for the Navy. We do not understand Laningham to be saying that a district judge may not draft a Memorandum Order before the time for filing an opposition expires, but that is all that happened here. Laningham was not deprived of the safeguards due him under Rule 56.

In any event, the opposition filed by Laningham on January 7th was inadequate to raise a genuine issue of material fact and summary judgment was, therefore, properly granted. We now turn to this subject.

### III.

■ We must determine whether the district court erred in finding that the Navy is entitled to summary judgment as a matter of law. Laningham argues that summary judgment was inappropriate because the Navy's intent in disclosing the documents remained a genuine issue of material fact for trial.[5] We disagree.

### A.

In ruling on a motion for summary judgment the court must determine first whether the moving party has met its burden of production: the movant must "inform[ ] the district court of the basis for its motion and identify[ ] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, —— U.S. ——, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The movant need not, however, support its motion with evidence negating the opponent's claim. *Id.*

If the motion for summary judgment is properly supported, the burden shifts to the non-movant to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c). In meeting this burden, the non-movant "may not rest upon mere allegation or denials of his pleading" but must present "affirmative evidence" showing a genuine issue for trial. *Anderson v. Liberty Lobby*, —— U.S. ——, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

A non-movant has met its burden of showing that a dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 106 S.Ct. at 2510. The standard employed for this determination "mirrors" the standard for a directed verdict, *Celotex*, 106 S.Ct. at 2553; *Anderson*, 106 S.Ct. at 2511, and thus, summary judgment is appropriate if "under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson*, 106 S.Ct. at 2511. In making this determination, the court must take the nonmovant's evidence as true and draw all legitimate inferences in his favor. *Id.* at 2513.[6] We now turn to

---

5. Laningham also argues that summary judgment was inappropriate because the declaration of Brooker, a member of the Justice Department, cannot negate the allegation of the Navy's willfulness. *See* Brief for Appellant at 18–19. The defendant, according to Laningham, was the United States Navy, not the Department of Justice, so that the latter's intent was irrelevant in a suit against the Navy for "intentional or willful" disclosure. This argument has no merit. The Claims Court action in which the administrative record was disclosed constituted a suit against a department of the United States, and the Justice Department acted as the Navy's attorney in handling that case. Brooker's actions amounted to the Navy's actions. Indeed, the Navy must defend itself in this suit, which is

predicated on actions of the Justice Department, because *respondeat superior* makes the Navy liable for the acts of its agents. Thus, the Brooker declaration is sufficient to support the motion for summary judgment in this case.

6. These rules apply equally when, as in this case, the issue in dispute involves a party's state of mind. *Anderson*, 106 S.Ct. at 2514. In these circumstances, a non-movant cannot "defeat a ... properly supported motion for summary judgment ... without offering any concrete evidence from which a reasonable juror could return a verdict in his favor and by merely asserting that the jury might, and legally could disbelieve the defendant's denial" but instead must

an application of these principles to the facts of this case.

## B.

 In an action for damages under the Privacy Act, the plaintiff has the burden of proving that the government's actions, when considered "in their context," were "intentional or willful." *Albright v. United States,* 732 F.2d 181, 189 (D.C.Cir. 1984); 5 U.S.C. 552a(g)(4). As interpreted by this court, this language does not "make the Government strictly liable for every affirmative or negligent action that might be said technically to violate the Privacy Act's provisions." *Albright,* 732 F.2d at 189. Furthermore, the mere fact that the government's action in releasing the documents could not be characterized as "inadvertent" does not suffice to meet the standard under section 552a(g)(4). *See id.* Instead, the violation must be so "patently egregious and unlawful" that anyone undertaking the conduct should have known it "unlawful." *Wisdom v. Department of Hous. & Urban Dev.,* 713 F.2d 422, 425 (8th Cir.1983), *cert. denied,* 465 U.S. 1021, 104 S.Ct. 1272, 79 L.Ed.2d 678 (1984); *see also Chapman v. National Aeronautics & Space Admin.,* 736 F.2d 238, 242–43 (5th Cir.), *cert. denied,* 469 U.S. 1038, 105 S.Ct. 517, 83 L.Ed.2d 406 (1984). Therefore, to meet its burden, the plaintiff must prove that the offending agency acted "without grounds for believing [its actions] lawful" or that if "flagrantly disregarded" the rights guaranteed under the Privacy Act. *Albright,* 732 F.2d at 189; *see also* Analysis of House and Senate Compromise Amendments to the Federal Privacy Act, *reprinted in* 120 Cong.Rec. 40,405, 40,406 (1974) (the standard for "intentional or willful" conduct under section 552a(g)(4) is "only somewhat greater than gross negligence").

In this case, the Navy submitted a declaration from Beacham O. Brooker, Jr., the attorney who served as counsel in the litigation in which the documents were disclosed. Brooker stated that he "did not intentionally or willfully seek to violate ... the Privacy Act [or] ... to embarrass or harm Mr. Laningham." J.A. at 36. Brooker then provided affirmative evidence of his intent in disclosing the documents: it is standard Justice Department practice to disclose such documents, *id.* at 34, and disclosure was necessary both to rebut any mistaken impression created by Laningham's partial submissions from the same set of documents, *id.* at 35–36, and to dispel any notion of improper conduct of administrative proceedings *pendente lite. Id.* at 36. From this evidence, it is clear that the Navy has met its burden of production; the evidence presented shows the absence of a genuine issue as to the government's intent in disclosing the documents.

Thus, the burden shifted to Laningham to come forward with evidence showing that there was a genuine issue as to the government's intent. To meet this burden, Laningham was required to provide evidence that would permit a reasonable jury to find that the Navy had acted "without grounds for believing its actions lawful" or had "flagrantly disregarded" his rights under the Privacy Act. *See Celotex,* 106 S.Ct. at 2555; *Anderson,* 106 S.Ct. at 2512.

 In response to the Navy's motion for summary judgment, Laningham submitted an unsworn opposition in which he claimed, in relevant part, that the Navy's actions in disclosing the records were intentional and willful because (1) the Navy was on notice that Laningham had expressed a privacy interest in the documents, (2) the Navy knew that the documents were not relevant to the Claims Court proceedings, and (3) the Navy could not have had a standard practice of filing the administrative record in this type of case because Laningham's case was the first of its kind. *See* R. 20, ¶¶ 5, 8. The issue then is whether this submission presented "affirmative evidence" sufficient to enable a reasonable jury to find that the Navy had disclosed the

provide evidence establishing the existence of a genuine issue regarding the defendant's state of mind. *Id.*

documents "without grounds for believing [its actions] lawful" or in "flagrant disregard" of Laningham's Privacy Act rights. We conclude that it did not.

We first consider the context in which the documents were disclosed. The Navy moved the Claims Court to file a sealed copy of Laningham's disability records only after Laningham referred to part of those records as support for his claim in the Claims Court proceeding. Thus, although the Navy believed that the documents, which related to Laningham's retirement disability proceedings, were not relevant to the Claims Court proceedings, the documents became relevant when Laningham chose to rely on a selected part of those records. Laningham was given an opportunity to oppose the disclosure and did so by arguably raising in his opposition a privacy interest in the documents. The issue of disclosure was also raised in a hearing before the Claims Court. The Navy did not disclose the documents until after the Claims Court had issued an order permitting it to file a sealed copy of the documents. The Claims Court ultimately relied on these documents in its disposition of Laningham's claim in those proceedings.

In support of its motion for summary judgment, the Navy submitted a sworn declaration explaining its intention in disclosing the documents. The statements in the declaration are fully consistent with the facts surrounding the disclosure. Under these circumstances, we cannot conclude that the Navy's disclosure of the documents, pursuant to a court order permitting them to do so, can be deemed to be without grounds for believing its actions to be lawful. The Claims Court considered the Navy's motion and Laningham's opposition and concluded that the records should be filed. The court then issued an order allowing the Navy to file the documents. This order presented the Navy with grounds for believing its actions lawful. *Cf.* 5 U.S.C. § 552a(b)(11) (1982) (disclosure permitted "pursuant to the order of a court of competent jurisdiction"); *Bruce v. United States*, 621 F.2d 914, 917 (8th Cir.1980) (decision to release records pursuant to subpoena cannot be considered a willful or intentional violation of the Act); *Moore v. United States Postal Serv.*, 609 F.Supp. 681 (E.D.N.Y.1985) (same).[7] Further, the Navy's actions in moving first to disclose the documents, under seal,[8] rebuts any contention that it acted in flagrant disregard of Laningham's Privacy Act rights.

Laningham's submission does nothing to alter this conclusion. That the Navy was aware of Laningham's privacy interest in the disclosed documents is not relevant to the issue of whether the court order, which was issued after that privacy interest was disclosed to the Claims Court, warranted the Navy's belief that its actions were lawful. Laningham's argument that his case is the first of its kind is merely an argument that in this case the Navy should have created an exception to its general practice of filing the administrative record in military pay cases. Finally, as mentioned above, the Navy's assertion that initially it did not believe the documents to be relevant to the Claims Court proceedings does not alter the fact that Laningham's own partial submission rendered the records relevant. Had Laningham presented some evidence of an intent other than that stated in the Brooker declaration, or that the court order was procured by misrepresentation, or that the records were wholly irrelevant to the Claims Court proceeding, our decision in this case might be different. But based upon the circumstances of this case, the evidence presented by the Navy, and appellant's failure to present any evidence from which a reasonable jury could find in his favor, we must conclude that Laningham has failed to provide evidence establishing the existence of

7. We express no opinion on whether the Claims Court order allowing the Navy to file the supplemental records is "an order of a court of competent jurisdiction" for purposes of 5 U.S.C. § 552a(b)(11). We hold only that it is relevant to determining the Navy's intent in disclosing the records.

8. We cannot determine from the record before us whether the documents were filed under seal or whether the seal was removed later. It is clear, however, that the Navy attempted to file the documents under seal.

a genuine issue of fact and that summary judgment for the Navy was appropriate.[9]

The order of the district court is therefore

*Affirmed.*

---

**9.** It is not clear from Laningham's Complaint and other pleadings in the district court, or from his brief on appeal, whether or not he also challenges the Navy's initial submission of the administrative record on November 1, 1981. Laningham refers to this submission in the "Background" section of his Complaint, R.1, ¶ 1, and in several other pleadings. *See* R. 6 at 5; J.A. at 11; R. 9 at 1; J.A. at 13; Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment, R. 12 at 3–4; R. 20 at 3; R. 23 at 3; Brief for Appellant at 5. Because we must construe these *pro se* pleadings liberally, we conclude that Laningham has also challenged the 1981 disclosure. Because, however, there is no evidence in the record that these documents were not relevant to the Claims Court proceedings, or that the Navy had any indication of a privacy interest in the documents, or any other evidence that these documents were filed other than pursuant to the Justice Department's practice of filing the administrative record in court cases, we also affirm the district court order granting summary judgment to the Navy on this claim.