Eugene STEPHENS, Plaintiff,

v.

TENNESSEE VALLEY
AUTHORITY, Defendant.

Civ. No. 3–87–666.

United States District Court,
E.D. Tennessee, N.D.

Sept. 28, 1990.

Sidney W. Gilreath, Knoxville, Tenn., for plaintiff.

Edward S. Christenbury, Gen. Counsel, James E. Fox, Deputy Gen. Counsel, Justin M. Schwamm, Sr., Asst. Gen. Counsel, Thomas F. Fine, A. Jackson Woodall, Office of Gen. Counsel, Tennessee Valley Authority, Knoxville, Tenn., for defendant.

MEMORANDUM OPINION

JARVIS, District Judge.

This is an action originally brought by a former Tennessee Valley Authority (TVA) employee under the Privacy Act of 1974, 5 U.S.C. § 552a, *et seq.*, for alleged violations of his federal civil rights, and under common law theories of violation of his right of privacy, abuse of process, and libel. Summary judgment has previously

been granted on all claims except for the Privacy Act claim resulting from TVA's September 24, 1986 release of a legal opinion of Joseph C. Swidler.[1] Currently pending is defendant's motion for summary judgment on the Privacy Act claim [Court File # 36]. For the reasons that follow, the motion will be granted.

## I.

### Factual Allegations

Many of the background facts are set out in this court's memorandum opinion of July 1, 1988 and will not be repeated herein. However, the following additional, undisputed facts must be considered.

On August 27, 1986, plaintiff filed a lawsuit in this court in which he complained that he had been placed on administrative leave from his position as Chief of the Retirement Services Branch, Division of the Comptroller, at TVA for alleged improprieties in the operation of the TVA Retirement System. To his complaint, the plaintiff attached a letter he had received from C.H. Dean, Jr. and John B. Waters, of the Board of Directors of TVA, which stated in part as follows:

> The TVA Board has received reports from the Inspector General implicating you in improprieties involving the TVA Retirement System. In addition, the TVA Board has received reports that you are impeding the Inspector General in his attempt to investigate allegations of improprieties in the administration of your office and of the TVA Retirement System Board.

See Complaint in *Stephens v. Dean, et al.,* Civil Action No. 3–86–635 (Dismissed October 21, 1986). That lawsuit was subsequently settled "except for any claim or cause of action based on the release of Joseph Swidler's September 24, 1986 memorandum or memoranda." The origin and contents of that memorandum is described below.

In October, 1985, TVA's Board of Directors established the Office of Inspector General (OIG). The plan establishing the OIG provided that, among other things, the IG would "conduct inquiries and make determinations relating to all TVA programs and operations" and "provide leadership and coordination and recommend policies for activities designed to prevent and detect fraud, waste, and abuse." Following a complaint by a Retirement Services Branch employee that plaintiff had sexually harassed her, the IG began an investigation. During the course of the investigation, additional allegations were made about plaintiff and Mr. Herb Sanger, TVA's general counsel. On August 15, 1986, TVA's IG Norman Zigrossi sent the TVA Board of Directors a memorandum listing "allegations of serious misconduct by those responsible for administering the Retirement System." These allegations had been made to OIG investigators by employees of the Retirement Services Branch. Upon receipt of the Memorandum, the TVA Board of Directors placed plaintiff on administrative leave with pay on August 19, 1986, and also suggested that Mr. Sanger go on administrative leave.

Following this, on August 27, 1986, plaintiff filed Civil Action No. 3–86–635 against the Board and the Inspector General alleging, among other things, that the IG was without authority to investigate either the retirement system or plaintiff's conduct. Following the filing of that lawsuit, both the Retirement System Board and the TVA Board sought independent legal advice on their fiduciary responsibilities to the members of the Retirement System and the relationship of the Retirement System to the TVA Board. The TVA Board sought the advice of a Washington, D.C. attorney, Joseph Swidler. The Retirement System Board sought the advice of Charles J. McCarthy, also a Washington, D.C. attorney and former TVA general counsel. So that Mr. Swidler could prepare his opinion, the TVA Board of Directors sent him, among other things, a copy of the IG's

---

1. Individuals are not proper defendants in a Privacy Act suit, which permits only the agency to be sued. *Windsor v. The Tennessean,* 719 F.2d 155, 160 (6th Cir.1983). Accordingly, all of the individual defendants have been dismissed and only TVA remains as a defendant.

August 15 memorandum raising allegations with regard to the plaintiff and Mr. Sanger.

Mr. Swidler prepared an opinion for the Board of Directors and delivered it to them in a letter dated September 24, 1986. Although the opinion is lengthy, the only part of it relevant to this lawsuit is set out in the first paragraph as follows:

> You have asked for my opinion as to the authority of the TVA Inspector General ("IG") to audit the Retirement System as part of his investigation of allegations of misconduct by a member of the System's Board of Directors and its Executive Secretary. The member was also employed as General Counsel of the Authority, and he has since resigned both positions. The Executive Secretary has been placed on administrative leave as an Authority employee and on that basis has been removed from his position with the Retirement System. The allegations include the receipt of kick-backs for appointment of particular investment managers or trustees, the receipt of other valuable favors from investment managers, and the manipulation of System investments for personal advantage. The IG has now begun an investigation of the allegations of misconduct, and the question has been raised by the Retirement System whether its independence from the Authority or its fiduciary obligations to its members preclude the IG from conducting the investigation.

*See* Affidavit of Charles Dean, Exhibit 2. These allegations in the September 24 letter were apparently taken from the August 15, 1986 memorandum from Norman Zigrossi to the TVA Board of Directors.

On September 16, 1986, William E. Mason, a former TVA assistant general counsel and attorney for the Retirement System, who had resigned simultaneously with Mr. Sanger, filed a Freedom of Information Act request for a copy of the Charles J. McCarthy opinion about the Retirement System. After consideration of that request and the two opinions, the members of the TVA Board of Directors determined to release both opinions. The Swidler legal opinion was to be distributed first to several TVA managers, the Retirement System Board of Directors, the president of the TVA Retirees Association, and Mr. McCarthy. It was then to be distributed to the public.

Sometime after its original distribution, TVA Acting General Counsel Lewis E. Wallace told members of the TVA Board that he preferred not to include allegations about specific persons in public discussion about the TVA Board's responsibilities in connection with the Retirement System. The TVA Board agreed and asked Mr. Swidler to remove the statements about specific persons from the opinion, and this was done. The TVA Board made an effort to recall its distribution of the original Swidler opinion, but at least one copy reached the press and was reported to the public. The revised Swidler legal opinion, together with the McCarthy opinion, was released to the public on October 1, 1986.

The IG subsequently investigated the allegations and concluded that plaintiff and others had accepted frequent meals, and a number of non-promotional gifts of relatively substantial value, from investment managers, but that "the evidence *does not* support the conclusion that ... Stephens received any kick-backs or violated any laws with respect to the [Retirement System] transactions" which the IG investigated. TVA received several Freedom of Information Act (FOIA) requests from the news media for the IG reports on his investigations of allegations of impropriety by Mr. Sanger and plaintiff. These reports, including the conclusion of no legal violations, were released to the press on November 2, 1987. The above facts are taken from the affidavit of Charles Dean and are undisputed by any countervailing affidavits or other evidence.

The plaintiff contends that the publication by TVA of those portions of the September 24, 1986 opinion of Mr. Swidler referring to the plaintiff constitutes a violation of the Privacy Act. TVA contends that it was not a violation of the Privacy Act since the information was not taken "directly" from a "system of records" and

that even if it was, the violation was not willful or intentional.

## II.

### Applicable Legal Standards

Plaintiff contends that TVA violated the Privacy Act which provides in part as follows:

[n]o agency shall disclose any record which is contained in the system of records by any means of communication to any person ... except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be—[within any of eleven enumerated permitted disclosures].

5 U.S.C. § 552a(b). The definitional section of the Act defines the term "record" to mean,

any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph.

5 U.S.C. § 552a(a)(4). The term "system of records" is defined to mean:

a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual.

5 U.S.C. § 552a(a)(5).

■ There is some confusion in the law with respect to whether the Privacy Act bars the disclosure of personal information obtained indirectly as opposed to directly from a system of records. *Compare Olberding v. United States Department of Defense*, 709 F.2d 621, 622 (8th Cir.1983) ("Only disclosure actionable under § 552a(b) is one resulting from a retrieval of the information initially and directly from the record contained in the system of

records.") *with Jackson v. Veterans Administration*, 503 F.Supp. 653, 655 (N.D. Ill.1980) ("For a disclosure to be covered by § 552a(b), there must have initially been a retrieval from the system of records which was at some point a source of the information."). However, it is clear that there is no provision of the Privacy Act which prohibits providing information to a third party without prior consent of the subject which a federal officer has acquired from personal observation or knowledge obtained from sources other than a record within the meaning of the Privacy Act. *Savarese v. United States Department of Health*, 479 F.Supp. 304, 307–09 (N.D.Ga. 1979), *aff'd. sub. nom., Savarese v. Harris*, 620 F.2d 298 (5th Cir.1980).

■ One limitation on the Privacy Act provisions is that records otherwise protected by the Act must be disclosed if required by the Freedom of Information Act. *Greentree v. U.S. Customs Service*, 674 F.2d 74, 76–77 (D.C.Cir.1982). In addition, there may be no recovery for violation by an agency of the Privacy Act where there was a wrongful disclosure, but the agency did not act "intentionally or willfully". *Laningham v. United States Navy*, 813 F.2d 1236, 1242 (D.C.Cir.1987). Plaintiff has the burden of showing that the defendant's actions were intentional or willful. *Id.* at 1242. The D.C. Circuit defined the terms intentional or willful as a "violation ... so patently egregious and unlawful that anyone undertaking [the] conduct should have known it was unlawful." *Id.* The court observed further that "to meet its burden, the plaintiff must prove that the offending agency acted 'without grounds for believing [its actions] lawful' or that it 'flagrantly disregarded' the rights guaranteed under the Privacy Act." *Id.*

Pursuant to Rule 56, summary judgment shall be rendered when requested if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. It is the burden of the party seeking summary judg-

ment to show the court that, under uncontradicted facts, the moving party is entitled to judgment as a matter of law. Summary judgment is intended to provide a quick, inexpensive means of resolving issues as to which there is no dispute regarding the material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In assessing the validity of a summary judgment motion, the court views the pleadings, depositions, answers to interrogatories, admissions, and competent affidavits in a light most favorable to the opponent of the motion. However, an opponent to a motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.*

A non-movant has met its burden of showing that a dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 106 S.Ct. at 2510. These rules apply equally when, as in this case, an issue in dispute involves a party's state of mind. *Id.* at 2514.

### III.

### *Analysis*

■ The court has reviewed the factual allegations in a light most favorable to the plaintiff and considered the above legal standards and concludes that as a matter of law the plaintiff has failed to raise a question of material fact with regard to the requisite level of intent under the Privacy Act. First, the information in question was not taken directly from a system of records. Rather, the information was received by the Board of Directors from the IG, arguably from a system of records, then sent to Attorney Swidler who summarized its contents in the first paragraph of

his opinion to the Board. There was at the time some authority for the position that a disclosure is only actionable under the Privacy Act where it is taken "initially and directly" from the record contained in the system of records. *Olberding*, 709 F.2d at 622. The court also notes that plaintiff had already publicized the fact that the IG had made allegations of misconduct against him by filing the complaint in Civil Action No. 3–86–635 on August 27, 1986. The Board might reasonably have concluded that no Privacy Act protected material was contained in the brief reference to the plaintiff in the Swidler opinion.

Second, there are critical concerns with regard to whether the Freedom of Information Act required publication of the material. Exempt from disclosure under the FOIA are "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). It is clear from Mr. Dean's affidavit that an attempt was made to get Mr. Swidler to remove statements about specific persons from his opinion, but that one apparently unsanitized version of the opinion got through to the press. There is no proof that this unsanitized version was intentionally shown to the press. The attempt to sanitize the document indicates a concern for the privacy interests of both plaintiff and Mr. Sanger.

The above makes it clear that at the least, there were significant questions with regard to whether the Swidler opinion was protected by the Privacy Act. It also makes it clear that TVA made an attempt to have references to any individual in the Swidler memorandum sanitized, obviously out of a recognition for privacy concerns. One of the elements on which plaintiff bears the burden of proof is demonstrating the requisite intent on the part of TVA. *Laningham*, 813 F.2d 1242. Although the court recognizes that ordinarily a question of intent is a question of fact, in this case, taking the evidence presented in a light most favorable to the plaintiff, plaintiff has failed to come forward with evidence indicating that TVA has committed a Privacy

Act violation "so patently egregious and unlawful that anyone undertaking [that] conduct should have known it was unlawful." *Id.* Since plaintiff has failed to raise an issue of material fact with respect to one of the essential elements of his claim, defendant's motion for summary judgment [Court File # 36] is hereby granted, and this action will be dismissed.

Order accordingly.