**Waldemar & Michelle TALEN, Plaintiffs,**

v.

**UNITED STATES of America, By and through, COMMISSIONER OF INTERNAL REVENUE, Defendant.**

**No. CIV.A. 03–00846(RMC).**

United States District Court, District of Columbia.

Oct. 27, 2004.

Richard Edward Preston, Alvin Brown & Associates, Fairfax, VA, for Plaintiffs.

Jennifer Lynn Vozne, U.S. Department of Justice Tax Division, Washington, DC, for Defendant.

### MEMORANDUM OPINION

COLLYER, District Judge.

Plaintiffs, Waldemar & Michelle Talen, challenge a Tax Lien Filing by the Internal Revenue Service ("IRS" or "Service") arising out of their positions as responsible officers of Talen & Talen, Inc., and Trust Fund Recovery Penalties owed by that business. The Talens seek to challenge the underlying liability that led to the tax lien. Defendant IRS filed a motion for summary judgment, which the Talens oppose. For the reasons set forth below, the Court will grant Defendant's motion.

### I. BACKGROUND

The facts will be told in chronological order, even though only the second half of this dispute is properly before the Court. Unless noted, the facts are not in dispute.

On March 27, 1998, the collection division of the IRS sent a notice of a proposed assessment of Trust Fund Recovery Penalty against Waldemar Talen and, by separate notice, Michelle Talen, for the quarterly tax periods beginning 3/31/96 and ending 12/31/97.[1] Each of the Talens submitted a written protest dated May 26, 1998. Mr. Talen stated, in whole, that he "could not pay the trust fund taxes for reasons outside his control." IRS Mem. Ex. D. Ms. Talen stated that she was "not a responsible person for the purposes of the assessment of this penalty [because] [s]he was not authorized to direct corporate moneys without the permission of Waldemar Talen ... [and she] was not aware that such corporate moneys were trust funds." *Id.* Ex. E.

By letter dated March 23, 2001, the IRS Office of Appeals in San Francisco denied the Talens' appeal of the Trust Fund Recovery Penalty because each of them was "an owner and officer of the corporation [ ][who] had a responsibility and duty to pay trust fund taxes." *Id.* Ex. F. at 2. Finding that the corporation had funds available, that the Talens had a significant stake in the corporation and significant control over its finances, and an ability to avoid the trust fund tax liability, the IRS determined that "an assessment will be made." *Id.* at 1.

On separate Forms 656, dated May 10, 2001, the Talens filed Offers in Compromise for the Trust Fund Recovery Penalty Assessments. By letter dated August 20, 2001, the IRS requested copies of supporting documentation to investigate the offer. Offer Specialist Frank Donahue of the IRS spoke with the Talens' representative on October 3, 2001, and informed him that not all of the required information had been received. A deadline of October 15, 2001, was set but not met. After a telephone conversation on October 17 with the Talens' representative, Mr. Donahue determined that the Talens did not intend to submit further documentation. He informed the Talens' representative of his intent to file Notices of Federal Tax Lien and of the taxpayers' right to file a Collection Appeal Program ("CAP") request. Mr. Donahue determined that the offers of compromise should be rejected because the offers would not contribute to effective tax administration, as claimed, and because the taxpayers had failed to submit all of the financial documentation necessary to evaluate the offers. By letters dated November 19, 2001, the Service notified the Talens that it had rejected their offers of compromise.

The Talens submitted a Collection Appeal Program ("CAP") Request, to appeal the proposed lien filing, on or about October 25, 2001. In this CAP appeal, the Talens argued that there is minimal or no equity in their residence and that a lien

---

1. The taxes at issue included, *inter alia,* corporate withholding taxes, individual taxes for Social Security, federal unemployment tax, and corporate taxes. IRS Mem. Ex. H.

would impair Mr. Talen's ability to generate income. After review of the administrative records and a telephone conference with the Talens' representative on October 31, 2001, the IRS Appeals Office determined that the lien was appropriate. The Talens were informed of the Service's determination by letters dated November 5, 2001.

On November 21, 2001, the IRS sent both Talens a Notice of Federal Tax Lien Filing and Your Right to A Hearing Under IRS 6320, which informed the Talens that the Service had filed a tax lien for the tax period ending 12/31/97 in the amount of $40,914.66. *Id.* Ex. A. The Notice stated that the lien "attaches to all property you currently own and to all property you may acquire in the future." *Id.* It also notified the Talens that each of them had a right to "appeal this collection action and to discuss your payment method options." *Id.* The Talens timely filed a Request for a Collection Due Process Hearing, received by the IRS on November 26, 2001. *Id.* Ex. C. This Request asserted, in whole, "We have no tax liability and this is a collection action. There is no equity in real estate. This is documented." *Id.*

David Snyder, a Settlement Officer in the IRS Appeals Office, Glendale, California, was assigned the duty of conducting the collection due process hearing on the Talens' appeals. Mr. Snyder had no prior involvement with the determination of the outstanding taxes. He received verification from the IRS Compliance Division that all statutory, regulatory, and administrative requirements were met before the Notice of Federal Tax Lien Filing was issued.[2]

The Talens elected to conduct the hearing by telephone and, on April 16, 2002, Mr. Snyder and two representatives for the Talens conducted a telephone conference. The only argument presented on behalf of the Talens during this hearing concerned the procedural validity of the Trust Fund Recovery Penalty Assessments, which they argued were made outside the statute of limitations for assessments. They did not otherwise challenge the Trust Fund Recovery penalty assessments, "were not interested in discussing any other matter, including alternatives to any potential collection action ... [or] present any collection alternative." Snyder Decl. ¶ 18.

Mr. Snyder reviewed the entire administrative record and concluded that the assessments were "properly and timely made using prompt assessment procedures due to an imminent assessment statute date." *Id.* ¶ 20. He also determined that the Talens' argument that the assessments were made outside the statute of limitations had already been addressed, and rejected, by Offer Specialist Donahue as well. *Id.* ¶ 21. Mr. Snyder determined that the Notice of Federal Tax Lien was appropriate. *Id.* ¶ 22.

By letters dated March 6, 2003, the IRS Appeals Office sent a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330, notifying each of the Talens that the IRS had determined that the Notice of Federal Tax Lien was appropriate. IRS Mem. Ex. J. Attached to this Notice of Determination was a memorandum prepared by Mr. Snyder that identified the matters considered at the appeals hearing on the Talens' collection due process appeal, in which he stated:

> The only issue [the Talens] referred to [at the collection due process hearing] was the validity of the Trust Fund Recovery Penalty assessment. This issue

---

2. These steps are prerequisites to the hearing on any taxpayer's appeal of an IRS collection action. *See* 26 U.S.C. § 6330(c)(1).

was thoroughly reviewed both at the Compliance level and in Appeals, and the assessment was determined correct.... Other than the assessment question, [the Talens] did not present any new information regarding any relevant issues.

Although a lien is intrusive, since [the Talens] presented no information or any alternatives for collection, the lien is the appropriate action under the circumstances. The filing of the lien therefore balances the need for efficient collection with [the Talens'] legitimate concern that the collection action be no more intrusive than necessary.

*Id.*[3]

This lawsuit was timely filed on April 7, 2003.[4]

Defendant contends that summary judgment is appropriate because the Talens are improperly attempting to challenge their underlying tax liability in this action, which is precluded by the Internal Revenue Code ("Tax Code"). IRS Mem. at 2. In addition, Defendant argues that the IRS did not abuse its discretion in determining that the filing of notice of federal tax liens against the Talens was proper where the Talens failed to present any collection alternatives. *Id.*

The Talens argue that they did not receive a "meaningful review" of their challenges to the procedural validity of the penalty assessments in compliance with the Tax Code; thus, material issues of fact exist concerning the scope of the appeals officer's review in the collections due process hearing. Pls.' Opp. at ¶ 4. The Talens also contend that the IRS abused its discretion in deciding to file a lien in a situation where the Talens presented facts to show that the lien filing damaged their ability to pay the underlying tax liability. *Id.* at ¶ 9.

## II. ISSUES

As stated by the IRS, two questions are presented by this case:

1. Congress has provided a taxpayer with the opportunity to challenge the existence or amount of a tax liability underlying the Service's administrative collection efforts if the taxpayer has not previously challenged the underlying liability or had an opportunity to do so. Plaintiffs had an administrative appeal of their underlying liability for a Trust Fund Recovery penalty assessment. May the taxpayers now challenge that underlying liability again in this collection due process suit?

2. Congress has provided a taxpayer with an opportunity to challenge the collection actions taken by the Service through collection due process procedures. Plaintiffs did not present any challenges to the appropriateness of the collection action nor any collection alternatives. Did the Commissioner abuse his discretion in sustaining the filing of notices of

---

3. This memorandum also stated that the Talens "were sent form 3040, Certificate of Assessment, completed by Fresno Service Center. This document is presumptive proof of the validity of the assessment." IRS Mem. Ex. J. Mr. Snyder's Declaration corrects this statement: the Talens received assessment documents pursuant to a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, but not a Certificate of Assessment. *See* Snyder Decl. ¶¶ 19, 24.

4. When the Plaintiffs, who were proceeding *pro se*, failed to appear at a status conference, the Court issued an order to show cause why their complaint should not be dismissed and an oral motion to dismiss, made by the IRS, granted. The Talens, residents of Moorpark, California, responded to the Court's Order through counsel. He explained that Waldemar Talen had been recovering from surgery. The order to show cause is satisfied. The motion to dismiss for want of prosecution is denied..

federal tax lien when the taxpayers did not present any challenges to the appropriateness of collection activities or any collection alternatives? IRS Mem. at 2. The Court finds that the answer to each question is "no."

### III. LEGAL STANDARDS

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the record shows that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is not a disfavored legal shortcut; rather, it is a reasoned and careful way to resolve cases fairly and expeditiously. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether a genuine issue of material fact exists, the court must view all facts and reasonable inferences in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Tao v. Freeh,* 27 F.3d 635, 638 (D.C.Cir.1994). Only factual disputes that are capable of affecting the substantive outcome of the case under the governing law are deemed "material" and "genuine." *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Laningham v. United States Navy,* 813 F.2d 1236, 1242–42 (D.C.Cir.1987). A party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Upon review of the motion, the parties' briefs, and the entire record, the Court concludes that there is no genuine issue of material fact in this case.

### IV. ANALYSIS

#### A. Sections 6320 and 6330 of the Internal Revenue Code

Two provisions of the Tax Code are at issue here: 26 U.S.C. § 6320 and 26 U.S.C. § 6330. These sections extend different rights to a taxpayer. Section 6320 provides for an administrative hearing and administrative appeal after the IRS files a notice of a federal tax lien. *See* 26 U.S.C. § 6320(a)(3)(B) & (C). Section 6330 provides for an administrative hearing and a court appeal before the IRS can actually levy on the property. *See id.* § 6330(b) & (d). The two sections of the Tax Code are related in that some procedures concerning the appeal of a tax lien under section 6320 are specified in section 6330. *See id.* § 6320(c). These provisions were added to the Tax Code by Section 3401 of the IRS Restructuring and Reform Act of 1998, Pub.L. No. 105–206, 112 Stat. 685, 747–79 (1998).

Section 6320 specifies the timing and content of a notice to a taxpayer upon filing a notice of lien and grants the right to a fair hearing upon request. *See* 26 U.S.C. § 6320(a) & (b). The hearing must be conducted by an IRS employee who has had no prior involvement with respect to the unpaid tax unless the taxpayer waives that requirement. *Id.* § 6320(b)(3).

Section 6330 specifies the matters and the issues to be considered at a collections due process hearing pursuant to section 6320. *See id.* § 6330(c)(1) & (2) as incorporated by § 6320(c). First, the appeals officer shall "obtain verification ... that the requirements of any applicable law or administrative procedure have been met." *Id.* § 6330(c)(1). Second, the taxpayer may raise "any relevant issue relating to the unpaid tax or the proposed levy"[5] and

**5.** The Tax Code suggests that the taxpayer might present spousal defense, challenges to

may also challenge "the existence or amount of the underlying tax liability . . . *if the person* did not receive any statutory notice of deficiency for such tax liability or *did not otherwise have an opportunity to dispute such tax liability.*" *Id.* § 6330(c)(2)(A) & (B) (emphasis added). However, an issue may *not* be raised at the section 6320 hearing if it was "raised and considered . . . in any other previous administrative or judicial proceeding" and if the taxpayer "participated meaningfully in such hearing or proceeding." *Id.* § 6330(c)(4)(A) & (B).[6]

In reaching a determination after a section 6320 hearing, the appeals officer takes into consideration the verification that the requirements of law and procedure have been met, the issues raised relating to the unpaid tax or appropriateness of collection actions, and "whether any proposed collection action balances the need for efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary." *Id.* § 6330(c)(3)(A), (B) & (C).

A taxpayer can appeal the results of a section 6320 hearing in court within 30 days of the appeals determination. *See id.* § 6330(d)(1) as incorporated by § 6320(c). The Talens timely exercised their rights to

appeal the section 6320 hearing by filing the instant complaint.

## B. Plaintiffs' Challenge to the Underlying Tax Assessments

The Talens contend that the validity of the underlying tax assessments is at issue in this case because the assessment was "untimely and therefore without authority." Pls.' Mem. ¶ 4.[7] In their statement of facts, the Talens suggest that they have an expert who "found that the IRS Master File showed the assessments were made improperly and backdated to predate the expiration of the assessment statute. . . . [T]he IRS assessment transcripts were post dated after the date of the purported assessment and . . . the transcripts were manipulated to show the earlier assessment was made within the statutory period." Pls.' Opp. ¶¶ 5, 6. This expert's report was not submitted and the Court has no evidentiary basis on which to assess the validity of the argument, even if the Talens could now challenge the liability.

More to the point, the Tax Code is clear in this respect: once a taxpayer has been given the opportunity to utilize the administrative review process to challenge a tax assessment, the question of a tax liability cannot be revisited by way of a court lawsuit pursuant to section 6320 or

---

the appropriateness of collection actions, or offers of collection alternatives, which may include posting a bond, substituting other assets, paying in installments, or an offer in compromise. *See* 26 U.S.C. § 6330(c)(2).

6. Mr. Snyder explains, "Although the taxpayers were precluded from discussing the validity of the underlying trust fund recovery penalty assessments [at the section 6320 hearing], including the procedural or technical merits of the assessment procedure, as these issues *had been addressed by the Compliance level and in Appeals,* I did review the administrative records of the Talens, including assessment documents . . . [which] reflect[ ] that the assessments were properly and timely made

. . . ." Snyder Decl. ¶¶ 19, 20 (emphasis added).

7. The Talens argue that they are not literally challenging the underlying liability, but rather they are directly challenging the "assessment procedures and the date the act[s] were performed." Pls.' Opp. ¶ 7. This argument must fail. The Talens' contention that the IRS did not make a timely assessment is in fact a challenge to the existence of the underlying liability. *See Rodriguez v. Comm'r,* 2003 WL 21213099, 85 T.C.M. (CCH) 1414 (2003) (holding that a "claim that the time to assess tax has expired is a challenge to the underlying tax liability" (citations omitted)).

6330. *See* 26 U.S.C. § 6330(c)(2)(B). The Talens filed written protests disputing the assessments made against them, which were considered by the Appeals Office and ultimately denied. Snyder Decl. ¶¶ 8–9. Accordingly, because the Talens had the opportunity to dispute their underlying tax liability at the administrative level, they are precluded from now challenging it in this Court. *See Bartolomeo v. United States,* 292 F.Supp.2d 728, 731–32 (W.D.Pa.2003); *Goldman v. Comm'r,* 2004 WL 25246, 87 T.C.M. (CCH) 790 (2004). Therefore, the only issue before this Court is whether the IRS properly selected a tax lien as its collection vehicle.

## C. Plaintiffs' Challenge to the IRS's Determination

Before reviewing the IRS's determination that a tax lien was an appropriate means of collection, the Court must first determine the appropriate standard of review. Section 6330(d) of the Tax Code, which provides for judicial review of the determination after the § 6320 hearing, does not state the standard of review. However, the IRS directs the Court to the legislative history, which states:

> The determination of the appeals officer may be appealed to the Tax Court, or where appropriate, the Federal district court.... Where the validity of the tax liability is not properly part of the appeal, the taxpayer may challenge the determination of the appeals officer for an abuse of discretion. In such cases, the appeal[s] officer's determination as to the appropriateness of the collection activity will be reviewed using an abuse of discretion standard of review.

H. Rep. No. 105–599 at 266 (1998), U.S.Code Cong. & Admin.News 1998, p. 288. Other courts have found this passage persuasive. *See Bartolomeo,* 292 F.Supp.2d at 732; *MRCA Info. Services v. United States,* 145 F.Supp.2d 194, 199 (D.Conn.2000); *Goza v. Comm'r,* 2000 WL 283864, 114 T.C. 176, 181–182 (2000).

Although the issue has not been decided in this circuit, the "abuse of discretion" standard also appears in the scope-of-review provision of the Administrative Procedure Act, 5 U.S.C. § 706(B), which gives a reviewing court authority to set aside agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* at § 706(2)(A).

■ The Talens argue that the standard of review is *de novo* where the validity of the underlying tax liability is at issue, but otherwise they agree with the IRS that the scope of review is abuse of discretion. Pls.' Mem. ¶¶ 3, 5 ("Where the underlying tax liability is not in issue the court reviews the decision of an appeals officer using an abuse of discretion standard"). The Court accepts the parties' explication of the law. *See also Bartolomeo,* 292 F.Supp.2d at 732 ("Congress intended the Court to review Appeals Office decisions for abuse of discretion where ... the amount of the tax liability was not in dispute at the hearing"); *Rivera v. Comm'r,* 2003 WL 345341, 85 T.C.M. (CCH) 832 (2003) ("If the validity of the underlying tax liability is at issue, the Court will review a taxpayer's liability de novo. The Court reviews other administrative determinations for an abuse of discretion.")

Here, because the Talens' challenge to their underlying tax liability is not properly before the Court, review of the IRS's determination will be based on the abuse-of-discretion standard. Accordingly, the Court will not substitute its judgment for that of the IRS, but will determine whether the agency decision was based on the consideration of relevant factors and whether there has been clear error. *See Motor Vehicle Mfrs. Assn. v. State Farm Mutual Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983); *Com-*

*munities Against Runway Expansion, Inc. v. F.A.A.,* 355 F.3d 678, 685 (D.C.Cir. 2004).

■ In this case, the collections due-process hearing met the requirements of the statute. Mr. Snyder had no prior involvement with the issue of the Talens' tax liability. He verified that the requirements of applicable law and administrative procedure have been met. Snyder Decl. ¶ 6. Specifically, he found,

> IRC [Internal Revenue Code] 6321 creates a lien if the taxpayer has received the Notice and Demand required under IRC 6303 and has neglected or refused to pay the amount demanded. Review of transcripts indicates this notice for the periods at issue was mailed to you and there is still a balance due.

> IRC Section 6331(d) requires that the IRS notify a taxpayer at least 30 days before a Notice of Levy can be issued. Transcripts show that this notice was mailed to you.

> IRC Section 6320(a) provides that no lien may be filed unless the IRS notifies a taxpayer of the opportunity for a hearing with the IRS Office of Appeals. A NOTICE OF FEDERAL TAX LIEN FILING AND YOUR RIGHT TO A HEARING was sent to you by certified mail, return receipt requested, on November 16, 2001. Your Form 12153 [requesting a collection due process hearing] was received November 26, 2001, so your request for a hearing was timely.

IRS Mem. Ex. J. At the hearing, the representatives of the Talens only argued about the validity of the assessment and did not challenge the appropriateness of the collection action by way of a lien or offer any collection alternatives. *Id.* The Talens stated in their request for a collection due-process hearing, "There is no equity in real estate," IRS Mem. Ex. C., and they assert in this Court that they "presented facts to show the lien filing dam-

aged the taxpayers' ability to pay the underlying tax liability." (Pls.' Mem. ¶ 9.) They argue here that it was an abuse of discretion for the IRS to fail to consider "the negative impact the tax lien would have on the taxpayers' ability to pay the tax." (Pls.' Opp. ¶ 8.) While this *argument* was presented to the IRS during the collection due-process appeal, the record does not support the Talens' assertion that they presented evidentiary *facts* to show the lien filing damaged the taxpayers' ability to pay. Rather, the IRS noted that the Talens "did not present any new information" at the section 6320 hearing. IRS Mem. Ex. J. The same document repeated that the Talens "presented no information or any alternatives for collection." *Id.* The Talens offer only the argument of counsel, but no evidence to the contrary. The IRS could not consider what was not presented. This Court cannot find that the IRS abused its discretion when the taxpayer failed to offer any collection alternatives.

## V. CONCLUSION

For the foregoing reasons, the Court will enter judgment in favor of Defendant. A separate order accompanies this memorandum opinion.

### *ORDER AND JUDGMENT*

For the reasons stated in the Memorandum Opinion separately and contemporaneously issued this 27th day of October, 2004, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED**; and it is

**FURTHER ORDERED** that **JUDGMENT** is entered in favor of Defendant and against Plaintiff.

**SO ORDERED.**