Raymond D. BOWYER,
Plaintiff-Appellant,

v.

The UNITED STATES DEPARTMENT OF AIR FORCE and Grissom Air Force Base, Defendants-Appellees.

No. 86–1108.

United States Court of Appeals,
Seventh Circuit.

Argued June 13, 1986.

Decided Nov. 3, 1986.

Mark T. Kykstra, Butler, McCanna & Dykstra, Auburn, Ind., for plaintiff-appellant.

Andrew F. Reish, U.S. Air Force, Washington, D.C., for defendants-appellees.

Before CUMMINGS and POSNER, Circuit Judges, and GORDON, Senior District Judge.*

CUMMINGS, Circuit Judge.

Plaintiff Raymond Bowyer brought suit in 1985 claiming that his rights under the Privacy Act of 1974, 5 U.S.C. § 552a, had been violated by defendants United States Department of Air Force (Air Force) and Grissom Air Force Base (GAFB). In his complaint Bowyer alleged that while he was an employee of GAFB the defendants maintained information about his job performance without his knowledge, that the information was not maintained with such "accuracy, relevance, timeliness, and completeness as [was] reasonably necessary to assure fairness," and that the information was used against him.

Defendants filed a motion for summary judgment that was initially denied by the district court. The district court found that "the extent to which the Air Force used these documents is a question of fact to be determined in this case. Since a material question remains open, summary judgment is not appropriate." Defendants then filed a motion to reconsider. After a supplemental motion to reconsider was filed, the district court issued an Order granting the defendants' motion for summary judgment. The issue on appeal is whether a factual dispute exists as to whether the defendants maintained records that were used against the plaintiff.

Bowyer was employed at GAFB as a seasonal heavy equipment operator during the winters of 1978–1981. Bowyer applied for a job in 1982, 1983, and 1984, but was not hired. During the relevant time period James McClanahan was a civilian Air Force employee and GAFB Superintendent of Roads and Grounds. According to Bowyer, in 1979–1980 he informed the GAFB Wing Commander of illegal activities under McClanahan's administration. As a consequence McClanahan almost lost his job. At the orientation meeting for the next season (1980–1981) McClanahan announced, "If anyone tries to stab me in the ass, like what happened last year, then you're going to be the one who gets it, not me." McClanahan then began to maintain an elaborate system of files on temporary employees like Bowyer. These included the "Supervisor's Record of Employee," "Air Force Form 971," "Personal Convenience of Employee," and "Memos for Record." The issues in this case revolve around the "Memos for Record" files.

Bowyer discovered that the Memos for Record (Memos) existed after a discussion with a permanent roads and grounds employee, Thor Christiansen. In 1982 Christiansen told Bowyer that he saw a folder in the Superintendent's desk with his name on it. The folder contained handwritten Memos about Christiansen.

Bowyer received copies of his Memos after submitting a Freedom of Information Act (FOIA) request to GAFB. The response to Bowyer's request included an index and "releasable documents." Among the releasable documents were six Memos pertaining to Bowyer and his employment performance. The Memos were kept in the Superintendent's desk along with all personnel information on the roads and grounds employees. Each Memo is dated and signed by at least one witness. Five of the Memos were prepared by McClanahan. The sixth was prepared by Ora B. Barker[1] on December 10, 1981, while McClanahan was temporarily assigned at Vandenberg Air Force Base in California.

Attached to defendants' motion for summary judgment was the affidavit of McCla-

---

* The Honorable Myron Gordon, Senior District Judge for the Eastern District of Wisconsin, is sitting by designation.

1. Barker was evidently an associate of McClanahan.

nahan. In his affidavit McClanahan states that the Memos were his "personal memos for record" that he prepared for use as "memory joggers." McClanahan describes the filing system as having no "systematic method for retrieval." As for the Memo prepared by Barker, McClanahan says that it somehow "found its way" into his otherwise personal file. He claims that Bowyer's six Memos were interspersed with other Memos in an unmarked file folder. According to McClanahan the Memos were personal records for his own use and they were never provided to anyone else.

Two other affidavits were filed in the initial summary judgment memoranda by Robert Anderson and Thor Christiansen. Anderson filled McClanahan's position while McClanahan was at Vandenberg Air Force Base in California. In his affidavit he states that when he assumed the job as GAFB Superintendent he found all official employee documents in his desk (formerly McClanahan's desk). These included the Memos in question. Anderson further states that he did not discuss the Memos with McClanahan nor did he review the documents. He also states that he intended to throw away the Memos, as non-official personal files, but never did so.

Christiansen's declaration states that he discovered the Memos in early 1982. In McClanahan's desk he found a file with his name on it and inside were Memos pertaining only to him. Christiansen also states that he saw other folders in the desk, each individually marked with an employee's name.

McClanahan then submitted a second affidavit in which he describes his personnel filing system. First, there were three-ring binders that contained Supervisor's Records of Employees and an Air Force Form 971 for every employee. Second, there were Personal Convenience of Employee files separately labeled under each employee's name. Finally, there was the "unlabeled plain manila folder" in which Memos about the employees were kept.

In its order granting summary judgment the district court ruled that there were no

factual disputes over whether the memos were "records," or were within a "system of records," or had been used in any determination by defendants adverse to Bowyer. Because we find that the complaint and affidavits do raise issues of material fact, we reverse.

Discussion.

Summary judgment is properly granted only when no genuine issues exist as to any material facts and the moving party is entitled to judgment as a matter of law. *McGraw-Edison v. Walt Disney Prods.,* 787 F.2d 1163 (7th Cir.1986). A reviewing court examines the evidence in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the party opposing the motion. *Black v. Henry Pratt Co.,* 778 F.2d 1278, 1281 (7th Cir.1985) (quoting Fed.R.Civ.P. 56(c)); *United States Shoe Corp. v. Hackett,* 793 F.2d 161, 166 (7th Cir.1986). Even though there may be no dispute over the basic facts, summary judgment is inappropriate if the parties disagree about the inferences to be drawn from those undisputed facts. *Stewart v. RCA Corp.,* 790 F.2d 624, 628 (7th Cir.1986). The district court's job is to decide whether there are issues to be tried, not to try the issues. *Central Nat'l Life Ins. Co. v. Fidelity & Deposit Co. of Maryland,* 626 F.2d 537, 539 (7th Cir.1980).

The Privacy Act, 5 U.S.C. § 552a(g)(1), provides that whenever any agency

(A) makes a determination under subsection (d)(3) of this section not to amend an individual's record in accordance with his request, or fails to make such review in conformity with that subsection;

(B) refuses to comply with an individual request under subsection (d)(1) of this section;

(C) fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is

made which is adverse to the individual; or

(D) fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual, the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection.

### 1. "Records"

The Act defines "records" as "any item, collection, or grouping of information about an individual that is maintained by an agency, including * * * employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. § 552a(a)(4).

 Private notes are not subject to the requirements of the Privacy Act. *Chapman v. NASA*, 682 F.2d 526 (5th Cir. 1982); *Boyd v. Secretary of the Navy*, 709 F.2d 684, 686 (11th Cir.1983), certiorari denied, 464 U.S. 1043, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984). Courts have reasoned that private notetaking is a tool that can aid the maker's memory in recalling events for workers' evaluations. But the private notes must be kept private. *Boyd*, 709 F.2d at 686; *Chapman*, 682 F.2d at 529. Additionally, once the notes are used by the agency to make a decision concerning an individual's employment status, the notes become subject to the provisions of the Act. *Chapman*, 682 F.2d at 529. We must decide if there is a factual dispute over whether the Memos were private memory joggers and were kept private.

 Although McClanahan states in his affidavit that these files were personal memory refreshers, other facts in the record refute this assertion. First, the Memos are dated, signed, and witnessed— rather formal procedures for personal notes. Second, the Memos were kept in the Superintendent's desk along with other official personnel records and were even left behind when McClanahan was assigned to Vandenberg Air Force Base. Third, others knew that the files existed; Anderson knew that the Memos were there, although he did not review them, and Ora B. Barker actually authored a Memo that mysteriously "found its way" into the file. And fourth, the Memos were retrievable through official channels, such as under the FOIA, as "releasable documents." At a minimum, these facts are inconsistent with the claim that the Memos were personal and kept private. Because there are genuine issues of fact, summary judgment is precluded.

### 2. "System of Records"

The Act defines a "system of records" as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. § 552a(a)(5). We must decide whether there remains a factual question about whether Bowyer's Memos were retrievable by reference to his name.[2]

 McClanahan claims that the Memos for all the employees were kept in one plain, unlabeled manila folder. However, several facts presented by plaintiff refute that claim. First, Christiansen's affidavit states that he found a folder with his name on it in McClanahan's desk that contained Memos pertaining only to him. He also asserts that he saw other file folders marked with individual names. Although it is possible to reconcile this discrepancy by reasoning that Christiansen was somehow the exception and that the other marked folders were other files, this reasoning process is for the jury or trier of fact, not the district court on summary judgment. Furthermore, Bowyer's records

---

**2.** Bowyer argues that 5 U.S.C. § 552a(g)(1)(C) does not require that the "record" be within a "system of records." Because his claim under 5 U.S.C. § 552a(g)(1)(D) does require that the record be within a system of records, we do not decide if subsection (g)(1)(C) differs.

were retrieved. Barker managed to insert a Memo into Bowyer's other Memos, those Memos were released to Bowyer pursuant to his FOIA request, and they were retrieved for use by the Merit Systems Protection Board. These all raise issues regarding the functional nature of the system and whether Bowyer's Memos were somehow keyed to his name.

3. "Use"

■ Under 5 U.S.C. § 552a(g)(1)(C) or (D) a plaintiff is required to show that the records caused an adverse determination. *Edison v. Department of the Army*, 672 F.2d 840, 845 (11th Cir.1982). Furthermore, the adverse determination must have been made (1) by the defendant and (2) on the plaintiff. *Perry v. FBI*, 759 F.2d 1271, 1275 (7th Cir.1985), reversed on other grounds, 781 F.2d 1294 (7th Cir.1986) (*en banc*). We need only decide whether a factual dispute remains over whether defendants used the Memos in a determination adverse to Bowyer.

■ Plaintiff enumerates several adverse determinations in which he claims the Memos played a role in the decision-making, such as the initial decision not to rehire plaintiff and the defense of that decision during departmental investigations.

McClanahan claims that he did not use the Memos in his decision not to rehire Bowyer. There are facts brought out in the memoranda, however, that may be inconsistent with that position. Bowyer states that he and McClanahan were on poor terms because Bowyer revealed McClanahan's illegal activities to his superiors. Afterwards McClanahan began the 1980–1981 season by threatening the workers with the loss of their jobs. Additionally, the Memos were dated, signed and witnessed—indications that McClanahan may have intended to use them in support of decisions to terminate his employees. At the very least, these factors suggest that a dispute remains regarding whether McClanahan used the Memos in his decision not to rehire Bowyer.

■ Bowyer also points to other official uses of the Memos, such as before the Merit Systems Protection Board (MSPB) when it reviewed the decision not to rehire him. It is true that if Bowyer contests the use of the Memos by the MSPB, he must bring a suit against that agency. *Perry*, 759 F.2d at 1275–1276. However, Bowyer may sue the defendants by claiming (as he does here) that they used the Memos to defend their decision before the MSPB. *Perry* only requires that under the Privacy Act a plaintiff sue the agency that actually used the records in a decision adverse to her or him. Here plaintiff claims that the Memos were used by defendants as support for their decision not to rehire him. And for the reasons discussed above, inferences may be drawn from the facts to support such a conclusion.

For the foregoing reasons, there exist genuine issues of material facts which preclude summary judgment. The judgment of the district court is reversed and the cause is remanded for further proceedings.