Rosemary F. RODGERS,
M.D., Plaintiff,

v.

DEPARTMENT OF the
ARMY, Defendant.

No. 86 C 8058.

United States District Court,
N.D. Illinois, E.D.

Jan. 6, 1988.

John L. Stainthorp, Chicago, Ill., for plaintiff.

Anton Valukas, U.S. Atty., William F. Murphy, Asst. U.S. Atty., Chicago, Ill., Major Harry Lee Dorsey, Office of the Judge Advocate General, Dept. of the Army, Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Plaintiff, Dr. Rosemary Rodgers, brought suit against defendant, Department of the Army, alleging violations of her rights under the Privacy Act, 5 U.S.C. § 552a (1982), and seeking injunctive relief

and damages.[1] In a three-count complaint plaintiff alleges defendant failed to amend certain inaccurate records evaluating her performance as a physician and failed to follow appropriate procedures in responding to her request for amendment. Plaintiff asserts defendant's actions were intentional and subsequently prevented her from obtaining employment at a hospital.

Cross motions for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, are now before the court. Defendant moves for summary judgment on all counts, claiming that the amendment of judgmental matters that plaintiff seeks is prohibited under the Army's privacy regulation, 32 C.F.R. § 505.2(j)(1) (1987), that operates in accordance with the requirements of the Privacy Act. *Id.* § 505.1(e)(3). Plaintiff seeks summary judgment as to count I, and claims that she is entitled to damages for defendant's failure to process her amendment request in a timely manner, which she alleges is a willful violation of the Privacy Act. For the following reasons we deny plaintiff's motion and grant defendant summary judgment.

### FACTS [2]

After serving as an Army physician from October 1979 until November 1982, plaintiff sought employment at Deaconess Hospital, in St. Louis, Missouri. On March 8, 1983, the Army provided Deaconess with a letter of reference, as plaintiff had requested, evaluating plaintiff's performance at Walter Reed Army Medical Center. This letter contained the following statement, based on plaintiff's record: "[She] did not interact well with her peers and colleagues" (Cplt.Att.A). Plaintiff contended this statement was inaccurate and, after pursuing various administrative channels, her Deaconess reference letter was amended to describe plaintiff's communications skills as "average, although there were episodes of inappropriate interactions with other members of the professional staff" (Cplt.Att.C). Plaintiff was not satisfied with this change and ultimately sought redress in this court.

On October 9, 1985, five days after that earlier action was dismissed, plaintiff wrote to three Army officials requesting amendment of records that she claimed were still inaccurate. Edward Shull, of the Office of the Surgeon General, responded on November 21, 1985, by asking plaintiff for further information and sending her a copy of the recent changes in the Army's privacy regulations.[3] Five days later plaintiff sent Shull copies of her record, portions of which were underlined where she desired amendment. Shull never responded to these documents despite plaintiff's demand for action in a letter dated January 21, 1986 (Cplt.Att.M). On March 12, 1986, plaintiff appealed what she characterized as a *de facto* denial of her request for amendment to the Army Review Board, but this appeal was returned by the Post Office as "undeliverable" (Cplt.Att.O).[4] Plaintiff then filed the current suit on October 23, 1986.

---

**1.** This is the second action plaintiff has brought before this court pursuant to the Privacy Act. We dismissed plaintiff's earlier suit because she failed to exhaust administrative remedies available to her before seeking federal review. *Rodgers v. Marsh*, No. 85–0579, slip op. at 5–7 (N.D.Ill. Oct. 4, 1985) [Available on WESTLAW, 1985 WL 2997].

**2.** For purposes of this summary judgment motion, we review all the facts and the reasonable inferences to be drawn therefrom in the light most favorable to the non-movant. *Bartman v. Allis–Chalmers Corp.*, 799 F.2d 311, 312 (7th Cir.1986), *cert. denied*, — U.S. —, 107 S.Ct. 1304, 94 L.Ed.2d 160 (1987); *Rodeo v. Gillman*, 787 F.2d 1175, 1177 (7th Cir.1986).

**3.** The modified Army regulations provide in pertinent part:

(1) Individuals may request the amendment of their records, in writing, when such records are believed to be inaccurate as a matter of fact rather than judgment, irrelevant, untimely, or incomplete.
(2) The amendment procedures are not intended to permit challenges of an event in a record that actually occurred, or to permit a collateral attack upon an event that has been the subject of a judicial or quasi-judicial action.

32 C.F.R. § 505.2(j)(1), (j)(2) (1986).

**4.** The parties dispute whether plaintiff had access to the correct address of the Army Review Board. However, this dispute is not material to the substantive law applicable in this case and therefore will not preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d

## DISCUSSION

### I. Summary Judgment

On a motion for summary judgment the moving party has the initial burden of production. The movant must demonstrate the absence of a genuine issue of material fact through proffered "pleadings, depositions, answers to interrogatories ... admissions on file," and affidavits, if there are any. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), (citing Fed.R.Civ.P. 56(c)). Once this burden is met, the non-movant "may not rest upon mere allegation or denial of his pleading" but must present affirmative evidence of a genuine issue for trial. *Anderson*, 106 S.Ct. at 2514 (1986). A genuine triable issue exists only if this evidence "is such that a reasonable jury could return a verdict for the non-moving party," *id.* at 2510, and summary judgment is appropriate if "under the governing law there can be but one reasonable conclusion as to the verdict." *Id.* at 2511.

### II. Amendment of Records

If there is no genuine issue of material fact as to whether plaintiff's record deserves judicial amendment, "then there [can] be no genuine issue as to whether [Army] officials willfully and intentionally maintained inaccurate records for the purposes of damages." *Moskiewicz v. United States Dept. of Agriculture*, 791 F.2d 561, 562 (7th Cir.1986). *See also Edison v. United States Dept. of the Army*, 672 F.2d 840, 846 (11th Cir.1982) (Wood, J., sitting by designation) (employing similar approach). We therefore begin by considering whether plaintiff has raised a triable issue on her claim that her records should be amended.

■ Defendant urges this court to conclude that under the Privacy Act records may be amended only if they contain errors of fact such as the misspelling of a name or an improper date of birth or social security number (Def.Mem. at 6 (citing 32 C.F.R. § 505.2(j)(2) (1986))). The courts however have not given the factual amendment requirement such a restrictive reading, and we refuse to do so here. *See, e.g., Hewitt v. Grabicki*, 794 F.2d 1373, 1378 (9th Cir. 1986) ("clear mistakes of fact, inaccurate opinions based solely upon such erroneous facts, and plainly irresponsible judgments of performance or character" should be eliminated from records); *DeBold v. Stimson*, 735 F.2d 1037, 1040–41 (7th Cir.1984) (amendment proper if party demonstrates that facts underlying judgments contained in records discredited); *R.R. v. United States Dept. of the Army*, 482 F.Supp. 770, 775 (D.D.C.1980) (thoroughly discredited judgments may be deleted from records). However, we are aware that "[a] court should be very hesitant to second-guess subjective evaluations and observations by an employee's superiors." *Hewitt*, 794 F.2d at 1378. To determine whether amendment is proper, we consider "whether the allegation is that the record is inaccurate, or, instead, that the authorized preparer of the record, although basing his judgment on accurate facts reached the wrong conclusion...." *Id.* at 1378–79 (citing Russell, *The Effect of the Privacy Act on Correction of Military Records*, 79 Mil. L.Rev. 135, 142–45 (1978)).

■ The complaint is directed to the characterization of and conclusion about plaintiff's dealings with other Army physicians (Pl. Memo. at 12, n. 2). The totality of the evidence supporting plaintiff's contention that her records are based on inaccurate facts is as follows: (1) plaintiff's sworn affidavit stating "my interactions with my peers and colleagues were professional and adequate" (Def.Appen. at 37); (2) plaintiff's unsworn three-page affidavit describing her version of incidents that apparently contributed to defendant's negative perceptions of her and disputing the accuracy of her psychiatrist's assessment of her psychological health (Def.Appen. at 38–40); and (3) a letter submitted by Toby Hollander, plaintiff's attorney at the time, excerpting sections of Army reports that she suggests support plaintiff's claim that the report is inaccurate (Def.Appen. at 45–46).

202 (1986); *Cameron v. Frances Slocum Bank & Trust Co.*, 824 F.2d 570, 574 (7th Cir.1987).

Plaintiff's proffered evidence does not raise a triable material issue. First, plaintiff's affidavits describe her own assessment of her relationship with colleagues and the state of her mental health at the time she was evaluated by her psychiatrist, Dr. Shaw. This evidence does not discredit the fact underlying defendant's judgment, but instead challenges defendant's conclusion as to the facts. Second, the excerpts cited in the Hollander letter do not contradict the statement plaintiff wants to amend. Rather, the excerpts assess positively plaintiff's performance during her earlier days as an Army physician and describe her interactions with others during the latter portion of her employment in neutral or negative terms. The excerpts also praise plaintiff's ability to work with subordinates. None of the excerpts reveal that defendant's judgment of plaintiff's most recent interactions with her peers was irresponsible or based on erroneous and unreliable facts.

Indeed, defendant offers credible evidence that these assessments were based on first-hand observation of plaintiff's emotional state and incidents that plaintiff admits occurred.[5] Specifically, defendant submits memoranda throughout the period from July 27 to August 6, 1982, describing plaintiff's interactions with other Army physicians and assessing plaintiff's mental health. Also entered in the record are affidavits and declarations of various doctors and colonels attesting to the accuracy of the earlier reports and clinical judgments. In short, plaintiff has not proffered colorable evidence raising a triable issue "which would lead one to conclude plaintiff's records deserve to be judicially amended", *Moskiewicz*, 791 F.2d at 562, and plaintiff's claim for damages due to defendant's refusal to amend therefore fails.

**III. Damages**

 While we need not reach plaintiff's claim for damages based on defendant's failure to amend, *id.*, plaintiff also seeks damages for defendant's failure to process her amendment request. "In an action for damages under the Privacy Act, the plaintiff has the burden of proving that the government's actions, when considered 'in their context,' were 'intentional or willful.'" *Laningham v. United States Navy*, 813 F.2d 1236, 1242 (D.C.Cir.1987) (quoting *Albright v. United States*, 732 F.2d 181, 189 (D.C.Cir.1984); 5 U.S.C. § 552a(g)(4)). This language does not "make the Government strictly liable for every affirmative or negligent action that might be said technically to violate the Privacy Act's provisions." *Albright*, 732 F.2d at 189. Rather, the agency violation must be so "patently egregious and unlawful" that anyone undertaking the action should have known it was "unlawful." *Laningham*, 813 F.2d at 1242 (citations omitted). The standard for assessing whether conduct is sufficiently "intentional or willful" to subject the acting agency to liability for damages is "only somewhat greater than gross negligence." *Moskiewicz*, 791 F.2d at 564 (citing *South v. Federal Bureau of Investigation*, 508 F.Supp. 1104 (N.D.Ill.1981)); *see Parks v. United States Internal Revenue Serv.*, 618 F.2d 677, 683 (10th Cir.1980) (applying greater than gross negligence standard).

The question we now address is whether defendant's delay in processing plaintiff's amendment request exhibits behavior sufficiently willful and reckless to subject defendant to liability under the Privacy Act. At least two courts have considered whether an agency's failure to act will render it liable for damages under the Privacy Act. In *Chocallo v. Bureau of Hearings and Appeals, SSA*, 548 F.Supp. 1349, 1368–69 (E.D.Pa.1982), *aff'd mem.*, 716 F.2d 889 (3d Cir.), *cert. denied*, 464 U.S. 983, 104 S.Ct. 426, 78 L.Ed.2d 360 (1983), and *Daniels v. St. Louis V.A. Regional Office*, 561 F.Supp. 250, 252 (E.D.Mo.1983), the Privacy Act was held not to provide a damages remedy for plaintiffs protesting agency delay in producing information in their files.

---

**5.** A letter written by John Stainthorp, plaintiff's attorney, on November 26, 1985, states:

Obviously some of the incidents reported did occur—it is the way in which the reports are written to which Dr. Rodgers objects. (Cplt.Att.L)

The *Chocallo* court ruled that defendant's alleged engagement in dilatory tactics did not meet the standard of "intentional and willful" conduct required for damages under the Privacy Act. 548 F.Supp. at 1369. In *Chocallo* the agency provided a final response to plaintiff's request for information approximately three weeks after she submitted the details necessary to identify the documents she sought. *Id.* In *Daniels* the plaintiff waited one month before learning that his request for information was denied. 561 F.Supp. at 251. He had not alleged that the agency's delay was intentional or willful, and the court found no evidence supporting such a conclusion. *Id.* at 252.

Unlike the plaintiffs in *Chocallo* and *Daniels*, plaintiff here waited far longer than weeks or even months without receiving any response from defendant. Defendant complains that plaintiff did not respond fully to its November 21, 1985 request for further information (Def.Mem. at 3–4), but admits that an excessive workload caused the delay (Def.Rep.Mem. at 2–3).[6] As plaintiff correctly points out, the Privacy Act carves out no statutory exception for delays due to overwork.

■ Whether the damages provisions in the Privacy Act were designed to address even severe processing delay, however, is not an issue that we must resolve today. To recover damages under § 552a(g)(4),

plaintiff must demonstrate that the complained of conduct caused her adversity.[7] *See Fagot v. Federal Deposit Ins. Corp.*, 584 F.Supp. 1168, 1176 (D.P.R.1984). Plaintiff claims that she was denied employment at Deaconess Hospital because her record was not accurate (Cplt. ¶¶ 30, 36, 37). It was thus defendant's failure to amend her record and not defendant's failure to process properly her request that cost plaintiff her job opportunity. Plaintiff's failure to allege that harm flowed specifically from defendant's failure to process her request, other than incurring attorney's fees pursuing this action (Cplt. ¶ 30), renders her claim for damages deficient. *See Bowyer*, 804 F.2d at 432 (Privacy Act requires causal link between challenged conduct and injury to plaintiff). *Accord Hewitt*, 794 F.2d at 1379; *Edison*, 672 F.2d at 845.

## CONCLUSION

For the foregoing reasons we deny plaintiff's motion for partial summary judgment and grant defendant summary judgment.

---

**6.** Defendant attempts to suggest that plaintiff's failure to correctly address her March 12, 1986 appeal is partially to blame for defendant's failure to process her amendment request (Def. Mem. at 5). Plaintiff's attempted *de facto* appeal was an inventive response to defendant's failure to process her request in a timely manner and in no way shifts the blame from defendant for failing to comply with its own regulations.

**7.** The parties dispute whether a plaintiff claiming entitlement to damages under the Privacy Act must show that he suffered an "adverse determination" and not simply an "adverse effect." As plaintiff correctly notes, while § 552a(g)(1)(C) requires an adverse determination be demonstrated, the plain language of § 552a(g)(1)(D) requires only an adverse effect. The parties are not alone, however, in their conflict over this issue. In *Albright*, 732 F.2d at 186 & n. 12, the court recognized that

§ 552a(g)(1)(D) requires simply an "adverse effect" (and the court noted the government's agreement with this position) in holding that emotional trauma was sufficient to qualify under the Act. In *Bowyer v. United States Dept. of the Air Force*, 804 F.2d 428, 432 (7th Cir.1986), the court stated that § 552a(g)(1)(C) and (D) both require that a plaintiff show an "adverse determination" resulted from the contested agency conduct. The *Bowyer* court cited *Edison*, 672 F.2d at 845, in support of its position, as have other courts. *E.g., Hewitt*, 794 F.2d at 1379. The court in *Edison*, however, held only that both § 552a(g)(1)(C) and (D) require a showing that the complained-of conduct was the proximate cause of plaintiff's injury and did not address the effect/determination distinction. Since we hold that plaintiff did not allege proximate causation from defendant's delay, we need not settle these divergent statutory interpretations.