**Angelo SANCHEZ, Plaintiff,**

v.

**Thomas ROTH, et al., Defendants.**

**No. 91 C 8006.**

United States District Court,
N.D. Illinois,
Eastern Division.

June 22, 1995.

Angelo Sanchez, Joliet, IL, pro se.

Thomas Michael Breen, Martin, Breen & Merrick, Chicago, IL, for plaintiff Angelo Sanchez.

Janice Lynne Schaffrick, Ashman & Stein, Chicago, IL, for defendant Thomas P. Roth, Warden.

Anne Loevy, Illinois Atty. Gens. Office, Janice Lynne Schaffrick, Ashman & Stein, for defendants Gilberto Romero, Herbert Givens, Investigator, Rosevelt Fleming, Glenn Johnson, Robert Griffin, Captains, William Price, D. Carter, Lieutenants, A. Johnson, Adjustment Comm. Chairperson, F. Mussatto, K. Hahn, Adjustment Comm. Members.

### *MEMORANDUM OPINION AND ORDER*

CASTILLO, District Judge.

Plaintiff, Angelo Sanchez, sues defendants, Gilberto Romero, Herbert Givens, Roosevelt Fleming, Glenn Johnson, William Price, Darryl Carter, Adrienne Johnson, Frank Mussato and Kathy Hahn, for due process violations under the Civil Rights Act of 1964, 42 U.S.C. § 1983. Plaintiff alleges that he was denied due process of law during a prison disciplinary hearing when the Adjustment Committee refused plaintiff's request to call witnesses and present exculpatory evidence in his defense. Defendants move for summary judgment. For the reasons which follow, defendants' Motion for Summary Judgment is granted.

### BACKGROUND

The following background facts have been drawn from the parties' Local Rule 12(M) and (N) Statements of Material Facts as to which there is no genuine issue and the

accompanying exhibits, *see* UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS LOCAL RULES Rule 12, as well as the various other pleadings and exhibits submitted to the Court in connection with the pending motions. Angelo Sanchez has been residing at Stateville Correctional Center in Joliet, Illinois, since 1981. (Defendants' Rule 12(M) Statement of Uncontested Facts ¶ 1). On July 13, 1991, there was an inmate riot in cellhouse F.[1] A prison official, Captain Buffington, was stabbed and a resident was shot and killed. (Rule 12(M) ¶ 11). Fires were set by several inmates in cellhouse F and the area became smoke-filled. In order to regain control, unidentified members of the prison TACT team fired tear gas into the cellhouse. (Rule 12(M) ¶ 12).

At the time of the July 13th riot, defendant Gilberto Romero was the Assistant Warden of Programs of the Stateville Correctional Center; defendant Herbert Givens was the Chief Internal Affairs Investigator; defendants Roosevelt Fleming and Glenn Johnson were captains; and defendants William Price and Darryl Carter were lieutenants. (Rule 12(M) ¶¶ 2–7, 17).

On July 19, 1991, Angelo Sanchez was taken to segregation in connection with the July 13th riot. Five days later, a prison official served Sanchez with the Disciplinary Report which placed him on "investigative status pending an investigation into the assault on Captain Buffington, Dangerous Disturbance, and/or Damage to State Property." (Exhibit 2, Disciplinary Report served on July 24, 1991). At the conclusion of the investigation, Sanchez received a copy of the Disciplinary Report charging him with the following offenses: 104–Dangerous Contraband, 105–Dangerous Disturbance, 202–Damage or Misuse of property, 206–Threats of Intimidation, and 601–Aiding and Abetting. (Exhibit 3, Disciplinary Report dated August 8, 1991). Specifically, Assistant Warden Gilberto Romero and Captain Glenn Johnson identified Sanchez "as one of the inmates that threw burning rags into a wooden storage cabinet that was adjoining Unit F tower." (Exhibit 3). In addition, Captain Fleming and Lieutenants Price and Carter identified Sanchez "as the inmate that threatened to assault Lieutenant Price." (Exhibit 3).

Angelo Sanchez subsequently appeared before the Adjustment Committee, composed of defendants Adrienne Johnson,[2] Frank Mussato, and Kathy Hahn, where he was found guilty of all charges, receiving one year in segregation, one year loss of good time credits, and demotion to grade C for one year. (Exhibit 5, Adjustment Committee Summary dated August 12, 1991). At the hearing, Sanchez orally presented his version of the events which took place during the July 13th riot. (Rule 12(M) ¶ 35). However, the Adjustment Committee refused Sanchez's requests to "confront his accusers" and present exculpatory evidence at the disciplinary hearing. (Rule 12(M) ¶¶ 9, 10, 34, 36).

Following the hearing, Sanchez filed a grievance in opposition to the Committee's finding of guilty. After re-interviewing Lieutenant Carter, the Threat and Intimidation charge in violation of Rule 206 was removed from Sanchez's record and all other charges were sustained with the punishment remaining the same.[3] (Rule 12(M) ¶ 45).

## DISCUSSION

### I. *Summary Judgment Standard*

Summary judgment is appropriate when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party has the initial burden of establishing that there is no genuine issue of material fact. A material question of fact is a question which will be outcome determinative of an issue in the case. The Supreme

---

1. Plaintiff occupied a cell in cellhouse F on July 13, 1991.

2. Defendant Adrienne Johnson was the Adjustment Committee Chairperson at Stateville.

3. The Illinois Department of Corrections Rules allow for a maximum penalty of demotion for one year to grade C, revocation of one year's good time, and segregation for one year when charged with Arson. (Exhibit H, Illinois Department of Corrections Rules Title 20, Part A, § 504.101).

Court has instructed that the facts material in a specific case shall be determined by the substantive law controlling the given case or issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Once the moving party has met their burden, the opposing party must go beyond the pleadings and set forth specific facts in affidavits or otherwise show that there is a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 321–327, 106 S.Ct. 2548, 2551–2555, 91 L.Ed.2d 265 (1986). The opposing party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment and may not rest upon allegations or denials of the pleadings." *Valentine v. Joliet Township High School Dist.*, 802 F.2d 981, 986 (7th Cir.1986); *see also Hughes v. Joliet Correctional Center*, 931 F.2d 425, 428 (7th Cir.1991). "The days are gone, if they ever existed, when the nonmoving party could sit back and simply poke holes in the moving party's summary judgment motion." *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir.1990). The court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Bowyer v. U.S. Dept. of Air Force*, 804 F.2d 428, 430 (7th Cir.1986). However, if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249–250, 106 S.Ct. at 2510–2511. In making its determination, the Court's sole function is to determine whether sufficient evidence exists to support a verdict in the nonmovant's favor, "whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

## II. *Disciplinary Hearing Due Process Requirements*

■ The plaintiff's burden in this Section 1983 claim is to prove that the Adjustment Committee violated his Constitutional right to Due Process when they refused to allow witnesses to be called and exculpatory evidence to be presented during his disciplinary hearing. Although a prisoner's rights are subject to restrictions imposed by the nature of the system to which he has been lawfully committed, he is not wholly deprived of constitutional protections. A prisoner may not be deprived of life, liberty, or property without due process of law. *Rasheed–Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir.1992). Nonetheless, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 2974–75, 41 L.Ed.2d 935 (1974). Overall, there must be a delicate balance between the needs and objectives of the penal institution and the general provisions of the Due Process Clause that are designed to protect every individual from arbitrary government action. *Id.*

■ In *Wolff v. McDonnell*, the Supreme Court established the minimum requirements of procedural due process to be afforded prisoners in disciplinary proceedings. Before being deprived of a protected liberty interest, a prisoner is entitled to 1) advance (at least 24 hours before the hearing) written notice of the claimed violation; 2) the opportunity to be heard before an impartial decision maker; 3) the opportunity, when consistent with institutional safety or correctional goals, to call witnesses and present documentary evidence in his defense; and 4) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action taken. *Wolff*, 418 U.S. at 563–66, 94 S.Ct. at 2978–79; *Superintendent Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454–55, 105 S.Ct. 2768, 2773–74, 86 L.Ed.2d 356 (1985).

In the instant case, only the third due process requirement of *Wolff* is at issue.[4]

4. The Supreme Court recently issued a ruling in *Sandin v. Conner*, —— U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), which reaffirmed the due process standards enunciated in *Wolff*. Although *Sandin* also addressed the relationship between prison regulations and the liberty interests that *Wolff's* due process requirements are intended to protect, the Court finds *Sandin* inapplicable to the facts of this case. *Sandin* essentially held that prison regulations with mandatory conditions do not create liberty interests (by negative implication) if those conditions are not

Angelo Sanchez bases his Section 1983 claim on an alleged due process violation when the Adjustment Committee refused his request to call witnesses and present documentary evidence at his August 12, 1991, disciplinary hearing.[5]

### A. Qualified Right to Call Witnesses

While a prisoner possesses a clear constitutional right to advance written notice and a written explanation regarding the punishment, a prisoner does not have an unqualified right to call witnesses. "Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority...." *Wolff,* 418 U.S. at 566, 94 S.Ct. at 2980. The inmate's right to present witnesses is necessarily curtailed by the penological need to provide rapid discipline in individual cases. "This right is additionally circumscribed by the very real dangers in prison life which may result from violence or intimidation directed at either other inmates or staff." *Baxter v. Palmigiano,* 425 U.S. 308, 321, 96 S.Ct. 1551, 1559, 47 L.Ed.2d 810 (1976).

In this case, the Disciplinary Report that Angelo Sanchez received prior to his hearing stated that he could ask that witnesses be questioned or, "if necessary," be called to testify during the hearing. (Exhibit 3, Disciplinary Report dated August 8, 1991). When Sanchez attended his disciplinary hearing, the witnesses he requested to be present were refused and the Committee found him guilty after hearing his oral testimony and reviewing information contained in the investigator's disciplinary report. (Rule 12(M) ¶¶ 35, 39, 40).

 The Supreme Court, in *Wolff,* suggested that it would be "useful" for the Com-

mittee to state its reasons for refusing to call a witness, whether it be for "irrelevance, lack of necessity, or the hazards presented in individual cases." *Wolff,* 418 U.S. at 566, 94 S.Ct. at 2980. Both parties appropriately concede that prison officials cannot arbitrarily deny an inmate's request for witnesses. "Due process does not permit the automatic exclusion of the right to call witnesses." *Hayes v. Walker,* 555 F.2d 625, 629 (7th Cir.), *cert. denied,* 434 U.S. 959, 98 S.Ct. 491, 54 L.Ed.2d 320 (1977). Some support for a denial of a request for witnesses must appear in the record to prevent arbitrary denials of a prisoner's right to call witnesses, which would render the right meaningless. *Id.* at 630.

The plaintiff accurately states that defendants cannot succeed if they rely on Adrienne Johnson's assertion that Illinois Department of Corrections ("IDOC") Rules prohibit *any* witness appearance before the Committee. (Plaintiff's Reply to Defendant's Motion for Summary Judgment at 7). According to Ms. Johnson, the Committee's reason for refusing Sanchez's witness request was that "witnesses are not present at an adjustment committee hearing." (Adrienne Johnson Dep. at 26, Adjustment Committee Summary dated August 12, 1991). This justification was recorded in the Adjustment Committee Summary. Additionally, in her deposition, Johnson stated that the IDOC Rules, specifically Section 504, prevent the Adjustment Committee from having witnesses present at the disciplinary hearings. (A. Johnson Dep. at 27). The prisoner is granted the opportunity to have witnesses *interviewed* prior to the hearing, but never to have them appear before the Committee—despite the language allowing for such testimony, "if necessary," in the Disciplinary Report. (A. Johnson Dep. at 26–27, 50, 52–53, 55).

satisfied, thereby triggering the due process protections of Wolff. This case does not involve the assertion of a liberty interest originating from the failure to follow mandatory prison regulations. Rather, the issue in this case is whether Sanchez availed himself of his right to call witnesses, a due process protection afforded by the IDOC regulations, by complying with these regulations.

5. Sanchez admits that he received adequate advance written notice of the claimed violation

(Rule 12(M) ¶ 26); he has not challenged the impartiality of the Adjustment Committee members; and he has admitted receiving a copy of the Adjustment Committee summary of its findings (Rule 12(M) ¶¶ 38, 40). Although Sanchez claims that he only received page one of the two page summary of the Committee's findings, he admits that the second page simply reiterates the information written on page one of the summary. (Rule 12(M) ¶ 38).

If defendants argue that the sole reason for not allowing Sanchez's witnesses to testify is because they *never* allow witnesses to testify at disciplinary hearings, their decision would be deemed arbitrary and in violation of the Due Process Clause of the 14th Amendment. *See Forbes v. Trigg,* 976 F.2d 308, 317 (7th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 1362, 122 L.Ed.2d 741 (1993). However, after viewing the record in the light most favorable to the plaintiff, it appears that defendants make a much more substantial argument than that pronounced by the plaintiff.

■ Defendants provide a legitimate reason for refusing to allow the witness testimony within the context of this litigation. Sanchez's Disciplinary Report, complying with IDOC Rules,[6] requires that prisoners "indicate in advance of the hearing the witnesses [they] wish to have *interviewed* and *specify what they could testify to* by filling out the appropriate space on [the] form, tearing it off, and returning it to the Adjustment Committee." (Disciplinary Report dated August 8, 1991) (emphasis added). Compliance with those simple procedures allows the Committee to determine whether witness testimony at the hearing is necessary. Sanchez claims that he sent a witness list to the Adjustment Committee the day before his hearing that asked for nine prison staff members to be present at his hearing to testify.[7] (Rule 12(M) ¶ 30). During the hearing, Sanchez gave a copy of the list of witnesses to Adrienne Johnson after she told him that she had not previously received the list.[8] (Plaintiff's Statement of Additional Uncontested Facts ¶ 11). However, as correctly pointed out by defendants, the witness list simply stated each individual's name. (Defendants Amended Reply to Plaintiff's Reply to Defendants' Motion for Summary Judgment at 6–7). Sanchez did not ask that these individuals be interviewed, nor did he indicate what they would testify to if called as witnesses.[9] (Rule 12(M) ¶ 30). Therefore, Sanchez did not follow the procedures indicated on his Disciplinary Report, established by the IDOC, to have any of the witnesses interviewed and, if essential, called to testify at the hearing.

In *Ponte v. Real,* the Supreme Court held that the Fourteenth Amendment does not require prison officials to state the reason for

6. The Illinois Department of Corrections developed a set of Rules to help the state prisons comply with the constitutional requirements explicated by the Supreme Court. Specifically, Title 20, Part A, § 504.80(f)(2) states:

Prior to the hearing, the committed person may request that witnesses be interviewed. The request shall be in writing on the space provided in the disciplinary report and shall include an explanation of what the witnesses would state. If the committed person fails to make the request in a timely manner before the hearing, he may be granted a continuance for good cause shown.

Title 20, Part A, § 504.80(h) provides the following:

The Adjustment Committee may consider any statements of witnesses with relevant knowledge of the incident. 1) The Committee or its Hearing Investigator may interview witnesses and prepare or review summaries of their testimony prior to or at the hearing. 2) The committed person does not have the right to confront or cross-examine any witnesses but may submit questions for witnesses to the Committee prior to the hearing. These questions shall be asked by the Committee or its Hearing Investigator unless found to be cumulative, irrelevant, or a threat to the safety of individuals or the security of the facility. 3) A means shall be provided in each living unit for committed persons to submit witness request slips. The Committee may disapprove witness requests that are not received prior to the hearing. 4) Witnesses requested by committed persons may be excluded if their testimony would be, among other matters, irrelevant or cumulative or would jeopardize the safety or disrupt the security of the facility. If any witness is excluded, a written reason shall be provided.

7. The witness list included: Captain William Buffington, Captain R. Fleming, Major Cory (Currie), Lieutenant Tazelarr (Tazallar), Correctional Officer Cooks, Lieutenant William Price, Lieutenant D. Carter, Assistant Warden Gilberto Romero, and Captain Glenn Johnson.

8. The Adjustment Committee Chairperson, Adrienne Johnson denied having ever received the list of witnesses before the hearing. (Rule 12(M) ¶ 31, Plaintiff's Statement of Additional Uncontested Facts ¶ 11).

9. Plaintiff claims that he tore off the bottom portion of his Disciplinary Report and attached it to the witness list he had prepared separately. (Plaintiff's Deposition at 119–120). However, the record indicates that, even if he did attach the bottom form, he did not request these witnesses be interviewed or what information these witnesses would provide at the hearing.

denying a prisoner's witness request in the administrative record of the disciplinary proceeding. *Ponte v. Real,* 471 U.S. 491, 496–500, 105 S.Ct. 2192, 2195–98, 85 L.Ed.2d 553 (1985). Instead, the officials have the option of presenting testimony in court, after-the-fact, if the deprivation of a "liberty" interest is challenged due to the refusal to call the requested witnesses. *Id.* Therefore, the Adjustment Committee can give an explanation for their refusal of the witness request within the disciplinary hearing record *or* later within court testimony related to a dispute over their refusal to call the witnesses. In light of the *Ponte* holding, prison officials can logically give a detailed, consistent justification of their decision when called into court. The initial statement that "witnesses are not present" is more like a statement of fact and does not provide much insight into the Adjustment Committee's reasoning behind the decision. Accordingly, the defendants' explanation that the witness request was improperly submitted should be acknowledged when determining whether the Committee acted arbitrarily in refusing witness testimony.

The record confirms that Angelo Sanchez did not follow all the procedures required for calling witnesses, including: 1) indicating what information each potential witness would be able to provide; and 2) asking that these individuals be interviewed prior to the hearing to determine whether their testimony would be necessary. (Rule 12(M) ¶ 30). Defendants properly raised this issue in their Motion for Summary Judgment. In light of the fact that a prisoner has only a qualified right to call witnesses at his disciplinary hearing, the Court finds that defendants have presented a legitimate excuse for refusing to call Sanchez's requested witnesses in

satisfaction of *Ponte v. Real,* 471 U.S. 491, 496–500 (1985). Therefore, the plaintiff has not suffered a due process violation with regard to his inability to call witnesses at his August 12, 1991, disciplinary hearing.

■ Furthermore, the Court finds that plaintiff had no constitutional right to confront or cross-examine witnesses even if he had actually submitted the proper request information. The Supreme Court carefully distinguished between the right to call witnesses and the right to confront and cross-examine witnesses. In comparison to the right to call witnesses, "[c]onfrontation and cross-examination present greater hazards to institutional interests." *Wolff,* 418 U.S. at 567, 94 S.Ct. at 2980. An inmate clearly has no constitutional right to confront and cross-examine adverse witnesses during a prison disciplinary hearing. *Baxter,* 425 U.S. at 321–23, 96 S.Ct. at 1559–60. The decision of whether to allow confrontation and cross-examination is left up to the sound discretion of the prison officials. *Brown–Bey v. United States,* 720 F.2d 467, 469 (7th Cir.1983).

Since there is no constitutional right to confront or cross-examine adverse witnesses, Sanchez was not legally authorized to question the five prison officials he wanted to confront.[10] The Chief Investigator, Herbert Givens, obtained a positive identification of the plaintiff's involvement in the fires from Asst. Warden Romero and Capt. G. Johnson[11] and an i.d. of the plaintiff's alleged assault on Lt. Price from Lt. Carter, Lt. Price, and Capt. Fleming.[12] (Rule 12(M) ¶¶ 16, 20, 25). Plaintiff wanted to call these five witnesses so that they could identify him again face-to-face to "ask them in person if they actually saw him doing the things he was charged with doing." (Rule 12(M) ¶ 34).

---

10. The plaintiff testified that he desired to call the prison staff members who accused him of the charges, Capt. Fleming, Lt. Price, Lt. Carter, Asst. Warden Romero, and Capt. G. Johnson, because he wanted the opportunity to "confront his accusers[s]." (Rule 12(M) ¶ 34).

11. The Adjustment Committee's finding that Sanchez was guilty of throwing burning rags and threatening to assault a prison official was based on affidavits by eyewitnesses and was therefore properly admitted and considered. *See generally Saenz v. Young,* 811 F.2d 1172, 1174 (7th Cir.

1987) (prison committee relied on written conduct report recounting officer's eyewitness account of prisoner's misconduct to find prisoner guilty; court held that this report was sufficient to satisfy due process).

12. The charge of Threats of Intimidation was dropped upon further investigation; therefore, the calling of Carter, Price, and Fleming is essentially immaterial to the plaintiff's due process claim.

The right to this sort of confrontation has been strictly limited to cases where the *prison officials* decide that such examination is appropriate. "[W]e should not be too ready to exercise oversight and put aside the judgment of prison administrators; it may be that a constitutional challenge to a disciplinary hearing such as [this] will rarely, if ever be successful." *Ponte,* 471 U.S. at 499, 105 S.Ct. at 2197 (citation omitted). "If confrontation and cross-examination of those furnishing evidence against the inmate were to be allowed as a matter of course, as in criminal trials, there would be considerable potential for havoc inside the prison walls." *Wolff,* 418 U.S. at 567, 94 S.Ct. at 2980.

Moreover, plaintiff was not harmed by the Adjustment Committee's refusal to call the witnesses. According to the Supreme Court, when a prisoner is not afforded the procedural protections to which he is entitled, the district court must determine whether the denial of due process caused the resulting deprivations for which damages are sought. *Carey v. Piphus,* 435 U.S. 247, 261, 98 S.Ct. 1042, 1051, 55 L.Ed.2d 252 (1977). As properly demonstrated by defendants, Sanchez wanted to call defendants Fleming, Carter, and Price as witnesses to identify him as the inmate that threatened to assault defendant Price. However, this charge was subsequently dropped from Sanchez's record, and he ultimately was not injured due to their absence.[13] Plaintiff wanted to call defendants Romero and G. Johnson as witnesses, but these individuals positively identified Sanchez under oath as the inmate involved in starting the fires. (Romero Dep. at 13–14, G. Johnson Dep. at 13–14). Therefore, there is no reason to believe they would have testified differently if called into the hearing.

Finally, plaintiff wanted to call Buffington, Currie, Tazallar, and Cooks as witnesses even though they had never accused him of any wrongdoing. (Plaintiff's Dep. at 40–45, 48, 53). In fact, plaintiff admits that he obtained these witness names from other inmates who had received disciplinary reports regarding the same incident. (Plain-

tiff's Dep. at 51). The record is completely devoid of any evidence that these four individuals could state whether Sanchez was involved in the charged misconduct or not. Plaintiff fails to realize that, even if these individuals testified that they did not see him throw burning rags, the testimony would not negate the positive identifications made by the other witnesses. The Supreme Court held that due process is satisfied so long as "there was some evidence from which the conclusion of the administrative tribunal could be deduced." *Superintendent,* 472 U.S. at 455, 105 S.Ct. at 2774 (quoting *United States ex rel. Vajtauer v. Commissioner of Immigration,* 273 U.S. 103, 106, 47 S.Ct. 302, 304, 71 L.Ed. 560 (1927)).

> Ascertaining whether th[e] ["some evidence"] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

*Superintendent,* 472 U.S. at 455–56, 105 S.Ct. at 2774. Consequently, had the plaintiff been allowed to call Buffington, Currie, Tazallar, and Cooks, their testimony, even if favorable to the plaintiff, would merely have provided conflicting evidence rather than negate the testimony of Assistant Warden Romero and Captain G. Johnson. *See Viens v. Daniels,* 871 F.2d 1328, 1335–36 (7th Cir. 1989). The statements by Romero and G. Johnson are sufficient evidence to find plaintiff guilty. Hence, Sanchez was not harmed when the Committee refused to call his requested witnesses. Plaintiff was unable to establish that there is a genuine issue as to any material fact regarding his qualified right to call witnesses; therefore, defendants are entitled to judgment as a matter of law.

**B. Limited Right to Present Exculpatory Evidence**

 Plaintiff's second claim is that his constitutional right to due process of law was

---

**13.** Although the Plaintiff argues that he was injured by receiving a more severe punishment due to his conviction under Rule 206, the punishment he received is consistent with those imposed on prisoners who violate the remaining charges (*i.e.,* Arson = 1 year loss of good time, 1 year segregation, 1 year demotion to C grade) (IDOC Rules, Title 20, Part A, § 504.101).

**460**

violated when the Adjustment Committee allegedly refused his request to present an old disciplinary report, from May 22, 1991, where he was misidentified by a prison staff member in an incident completely unrelated to the instant claim. (Rule 12(M) ¶ 37). Exculpatory evidence is that which tends to justify, excuse, or clear the prisoner from alleged fault or guilt. *See generally Black's Law Dictionary* 566 (6th ed. 1990). The general rule is that an inmate is entitled to disclosure of exculpatory evidence, unless that disclosure would unduly threaten institutional safety and concerns. *Mendoza v. Miller,* 779 F.2d 1287, 1296–97 (7th Cir.1985), *cert. denied,* 476 U.S. 1142, 106 S.Ct. 2251, 90 L.Ed.2d 697 (1986). However, according to the IDOC Rules, the prisoner is only granted the opportunity to present "relevant" documents in his defense. (IDOC Title 20, Part A, § 504.80(f)(1)). The old disciplinary report was not relevant to the charges being brought against Sanchez at his August 12, 1991, hearing. Just because plaintiff had been misidentified by a prison staff member in the past does not connote that he was misidentified in connection with the burning of the guard tower on July 13th. The document he desired to present could in no way justify, excuse or clear Sanchez from the alleged actions of fault identified by defendants Romero and G. Johnson, namely, the throwing of burning rags.

In short, plaintiff's factual allegations fail to establish that his due process rights were violated when the Adjustment Committee refused to accept an unrelated disciplinary report as exculpatory evidence. Therefore, defendants should be granted summary judgment as a matter of law.

### III. *Qualified Immunity*

Defendants contend that they are immune from suit based on the notion of qualified immunity for government officials. "[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate *clearly established* statutory or constitutional rights of which a reasonable person would have known." *Alvarado v. Picur,* 859 F.2d 448, 452 (7th Cir.1988) (quoting

*Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). Since the Court has determined that defendants did not violate any clearly established right of the plaintiff in denying his requests to call witnesses and present documentary evidence, defendants are immune from suit under the doctrine of qualified immunity.

### CONCLUSION

Accordingly, the Court finds that the totality of the evidence presented by Angelo Sanchez does not raise a genuine issue of material fact as to whether defendants violated his right to due process of law during the August 12, 1991, disciplinary hearing. Therefore, defendants' Motion for Summary Judgment is granted on all counts. The Clerk of the Court is directed to enter judgment for defendants and terminate this case. Each party is to bear their own costs.